In the Matter of the Application of PHILIP BENDER, JR., Petitioner, for an Order Pursuant to Article 78 of the Civil Practice Act, against THE BOARD OF REGENTS OF THE UNIVERSITY OF THE STATE OF NEW YORK, Respondent.

Third Department, November 12, 1941.

*Thomas J. McKenna*, for the petitioner.

*John J. Bennett, Jr., Attorney-General; Henry Epstein, Solicitor General [Dorothy U. Smith, Assistant Attorney-General, of counsel], for the respondent.*

HEFFERNAN, J. This is a proceeding under article 78 of the Civil Practice Act to review a determination of respondent suspending petitioner's license to practice dentistry on the ground that in two instances he aided and abetted in the practice of this profession an unlicensed practitioner and on the further ground that he was guilty of unprofessional conduct.

Section 1300 of the Education Law, as it existed at the time of the alleged commission of the unlawful acts, in defining what constitutes the practice of dentistry, read: " A person practices dentistry within the meaning of this article, who holds himself out as being able to diagnose, treat, operate, or prescribe for any disease, pain, injury, deficiency, deformity, or physical condition of the human teeth, alveolar process, gums or jaws, and who shall either offer or undertake by any means or method to diagnose, treat, operate, or prescribe for any disease, pain, injury, deficiency, deformity, or physical condition of the same." This section was subsequently amended by chapter 742 of the Laws of 1940.

The pertinent provisions of section 1311 of the same law, relating to revocation of licenses, are:

" The license and registration of a practitioner of dentistry may be revoked, suspended or annulled, or such practitioner reprimanded, censured or otherwise disciplined in accordance with the provisions and procedure defined in this article upon decision and due hearing in any of the following cases: * * *

" (e) that the dentist has aided and abetted in the practice of dentistry a person who is not licensed to practice dentistry in this State; * * *

" (h) that the dentist has been otherwise or in any other way guilty of unprofessional conduct."

Petitioner has been engaged in the practice of dentistry since 1920. At the time when the acts complained of occurred he was regularly employed in his professional capacity by another dentist in the city of Buffalo. During the same period one Walter Reeb, not a dentist but a dental mechanic, was conducting a dental laboratory in the same city.

Charges were filed in the Police Court of the city of Buffalo by Anton Winkler and Laura Smith, two special investigators of the State Department of Education, criminally accusing Reeb of the illegal practice of dentistry. Reeb was apprehended and brought to trial before the police judge and a jury in October, 1938. On

the trial Winkler testified that on February 8, 1938, and for some time subsequently thereto, Reeb performed dental work for him for which Reeb was compensated. Mrs. Smith testified that on April 13, 1938, and on several occasions thereafter, Reeb, for a stated sum of money, performed dental work for her. The testimony of these two witnesses, if believed by the jury, clearly established that Reeb was guilty of the illegal practice of dentistry.

Petitioner became a witness for Reeb and testified that he and not Reeb performed the dental services which the witnesses for the prosecution alleged were performed by Reeb and that the latter had only done such mechanical work in connection with the two cases as the law permitted. Reeb's wife also testified on his behalf and her testimony corroborated that of petitioner.

At the conclusion of the evidence the court submitted the case to the jury and instructed them, in substance, that if they believed the testimony of the investigators, despite the denials of defendant's witnesses, it was their duty to convict Reeb, but that if, on the other hand, they disbelieved such testimony and accepted that of defendant's witnesses, it was their duty to acquit the defendant. After deliberation the jury rendered a verdict that Reeb was not guilty of the charges.

Thereafter and on September 20, 1939, the secretary of the Board of Dental Examiners of the State filed with the Board written charges under oath accusing petitioner in two counts of aiding and abetting Reeb in violation of section 1311 of the Education Law in the illegal practice of dentistry in connection with the work done for Winkler and Mrs. Smith. A third count in the charges accused petitioner of unprofessional conduct in testifying falsely on the trial of Reeb in the criminal court in Buffalo. Copies of the charges were served on petitioner and he filed a written denial thereof under oath. Later he was accorded a hearing before a committee of the Board of Dental Examiners and was found guilty on all counts. The committee recommended that petitioner should be suspended from the practice of dentistry for a period of six months. The report of the committee was adopted by the Board of Dental Examiners. The determination of the Dental Board was sustained by the Board of Regents on July 19, 1940, and an order was made suspending petitioner's license to practice dentistry for a period of six months from September 15, 1940, " and until the further order of the Commissioner of Education," with leave to petitioner to apply for reinstatement after the expiration of six months upon submitting satisfactory proof that during the period of suspension he had abstained from practicing dentistry. Thereafter this court stayed the determi-

nation of the Board of Regents pending the hearing and determination of this proceeding.

At the hearing before the Dental Board the only competent proof offered to establish petitioner's guilt was given by the special investigators who testified for the prosecution in People v. Reeb in the Police Court of Buffalo and whose testimony was there discredited by a jury. These two witnesses reiterated their former testimony. In addition to that one Waters, likewise an investigator for the Dental Board, testified that a card annexed to the mail box of Reeb had a notation thereon in pencil reading: " Dr. Ph. Bender, Jr." On cross-examination Waters was asked to write the name of petitioner. He reluctantly complied with the request. A handwriting expert who testified on behalf of petitioner swore that the name on the card attached to Reeb's mailbox was written by Waters and not by petitioner. Petitioner also denied that he either wrote the name on the card or that he had any knowledge of its existence. A mail carrier employed by the United States postal authorities, testifying on behalf of petitioner, swore that a card attached to Reeb's mail box had an inscription thereon reading: " Walter's Dental Laboratory " and that petitioner's name did not appear thereon. No handwriting expert was called by the committee to refute this testimony. Seven other witnesses testified regarding dental work done for them by Reeb. There was no proof to show that petitioner participated in the treatment of these patients of Reeb.

The complaint which he was required to answer did not apprise petitioner that he was charged with aiding and abetting Reeb in the treatment of any of these individuals. This testimony was clearly incompetent and should not have been received against petitioner.

Petitioner was sworn on his own behalf and reaffirmed the testimony which he gave in the criminal court in Buffalo. He vehemently denied all wrongdoing.

The third count in the charges against petitioner — that of perjury in the City Court of Buffalo — shocks our sense of justice and does violence to our conception of the faith and credit which should be accorded to a final judgment in a court of common law. A jury there found that petitioner testified truthfully; that the witnesses for the prosecution were not worthy of belief. If perjury was committed on that trial, and if the verdict of the jury is to be accorded any weight, then petitioner must be held guiltless of that crime.

We do not disagree with the argument of the able Assistant Attorney-General who argued this cause at our bar in which she

asserts that the acquittal of Reeb in the criminal court is no bar to the prosecution of petitioner before a disciplinary tribunal for complicity in Reeb's unlawful practice. The judgment of acquittal in the criminal court is not conclusive in this proceeding by force of any general doctrine of *res adjudicata.* (*Schindler* v. *Royal Insurance Co.,* 258 N. Y. 310; *Matter of Kaufmann,* 245 id. 423.)

We are convinced, however, that the Dental Board having failed to convict Reeb in the criminal action, is now attempting indirectly, in a friendly forum of its own selection, to reverse the jury's verdict. It is our conclusion that neither the Dental Board nor the respondent should endeavor in this manner to destroy the integrity of the judgment in the criminal case. That judgment should stay their hands from further prosecution of petitioner on the issues there litigated. Their attempt to render that judgment abortive suggests persecution rather than an honest endeavor to revoke the license of an unworthy member of the profession.

The procedure invoked against petitioner in the cause before us violates the essentials of a sound judicial proceeding. In the administration of justice it is not only requisite that a tribunal invested with judicial powers should be honest, unbiased, impartial and disinterested in fact, but equally essential that all doubt or suspicion to the contrary should be jealously guarded against and eliminated. Not only is it the duty of those exercising judicial functions to render a righteous judgment but it is of transcendent importance to the litigants and the public generally that there should not be the slightest suspicion as to their fairness and integrity. The impartiality of the judgment seat must always remain above suspicion. If a jury, in an action at law in the Supreme Court, arrived at the same result upon the same evidence and under the same circumstances, as did respondent, no impartial judge would acquiesce in its finding. The promptings of the judicial conscience will not permit us to sanction the determination under review.

The right to practice dentistry is, like the right to practice any other profession, a valuable property right, in which, under the Constitution and laws of the State, one is entitled to be protected and secured. The State, on the other hand, in the protection of the health and welfare of its citizens, has the right to prescribe such restrictions and regulations for those engaged in the practice as, in its judgment, shall protect the people from the consequences of fraud, ignorance or incapacity.

We have an abiding conviction that incompetent and unworthy persons should be excluded from all professions and that a license to practice any profession should be promptly revoked whenever it is shown that the holder thereof is guilty of grossly unprofessional,

dishonorable or immoral conduct. This result should only follow, however, after a fair and impartial hearing.

While a proceeding before an officer, board or department to revoke a license of a dentist is administrative rather than judicial and need not be conducted with the exactness, formality or technicality required before a judicial tribunal, nevertheless the holder of a license cannot be deprived of it without due process of law, or in other words, without due notice and a full opportunity to be heard before an impartial tribunal, nor without clear and convincing proof of his guilt.

The proof in the record before us does not meet those tests and hence the determination of respondent should be annulled on the law and facts, with fifty dollars costs and disbursements to petitioner, including disbursements in connection with the printing of the typewritten record and brief, and the matter is hereby remitted to respondent for further consideration.

HILL, P. J., CRAPSER, BLISS and FOSTER, JJ., concur.

Determination annulled on the law and facts, with fifty dollars costs and disbursements, including disbursements in connection with the printing of the typewritten record and brief, and the matter is remitted to the respondent for further consideration.