In the Matter of JOHN DOE, Appellant, v DAVID AXELROD, as Commissioner of Health of the State of New York, Respondent.

First Department, December 30, 1986

## APPEARANCES OF COUNSEL

*Jerome R. Halperin, P. C. (Guy S. Halperin* and *Alice Slater* with him on the brief), for appellant.

*Adina Kling* of counsel *(Robert Abrams, Attorney-General,* attorney), for respondent.

## OPINION OF THE COURT

FEIN, J.

This CPLR article 78 proceeding seeks to challenge the authority of the Commissioner of Health to issue an interlocutory order reversing a ruling of the Administrative Law

Officer appointed to a panel hearing professional misconduct charges against petitioner, a licensed medical practitioner. This appeal raises the substantive question of whether the Commissioner acted within his statutory authority, as well as the procedural question as to whether such an interlocutory ruling can be challenged in an article 78 proceeding.

Petitioner is a licensed physician who has practiced psychiatry in this State since 1970, treating what he describes as "severely emotionally disturbed and psychotic persons". He has served on the staff of a major hospital in the New York City metropolitan area, and also teaches psychiatry at a medical school. For a number of years petitioner maintained his own private practice in psychiatry, which he discontinued in March 1980 due to his own poor health.

In April 1985, charges were brought against petitioner for professional misconduct based upon the complaints of four female former patients. Each complainant alleged that petitioner had sexually abused her during the course of psychiatric treatment.

The procedure for hearing such complaints of alleged professional medical misconduct is set forth in Public Health Law article 2, title II-A. The Commissioner of Health is required to appoint at least 18 licensed physicians and at least 7 lay members to the Board for Professional Medical Conduct (Public Health Law § 230 [1]). The Commissioner is also required to designate an Administrative Officer, a nonvoting New York practicing attorney with authority to rule on all motions and objections raised during the hearing (Public Health Law § 230 [10] [e]). Professional misconduct proceedings shall be conducted by committees consisting of four physicians and one lay member of the Board. Upon conclusion of the hearing, the committee must make findings of fact, conclusions concerning the allegations, and a recommendation on proposed sanctions. These conclusions are then drafted by the Administrative Officer who forwards them to the Commissioner for action. Upon review of the committee's findings, conclusions and recommendation, the Commissioner then makes his own recommendation, which he forwards, together with the record, to the State Board of Regents, which is the body with ultimate authority to take disciplinary action (Public Health Law § 230 [10] [i]; Education Law § 6510-a [2]).

A statement of charges was preferred against petitioner on April 18, 1985. The hearing was conducted on June 11 and 12,

July 10 and 11 and August 14, 1985. The four complaining witnesses testified as to sexual abuse suffered in connection with treatment received, respectively, from September 1974 through March 1980, from May 1978 through September 1979, for several months in 1978, and for several weeks in the fall of 1970. In other words, none of the misconduct was alleged to have taken place within 5 years of these proceedings, and some had allegedly taken place as much as 15 years earlier.

Upon completion of the testimony of each of the four complaining witnesses, petitioner sought to cross-examine those witnesses as to whether or not any of them had filed prior complaints against him with the Board, and if so, a request was made to examine those prior complaints. Respondent's counsel vigorously objected, citing the confidentiality of such reports under Public Health Law § 230 (11) (a). After soliciting briefs and hearing oral argument on this point, the Administrative Officer overruled the objections, directing the witnesses to present themselves for cross-examination and directing respondents to produce documentary evidence of any such prior complaints. Respondent's counsel, after consulting with "colleagues in the Office of Professional Medical Conduct", announced her refusal to comply with the ruling of the Administrative Officer on the ground that it would be a violation of the law protecting the confidentiality of such proceedings. Petitioner's counsel at this point moved for dismissal of the charges against his client. The Administrative Officer advised respondent's counsel that she was in contempt for failure to comply with his ruling, and after consulting with the panel in executive session, the Administrative Officer announced that the proceedings would be adjourned for five weeks, to permit respondent to produce either the documents requested or a protective court order. Short of that, the Administrative Officer indicated that he would reconsider petitioner's dismissal motion.

Upon the reconvening of hearings, respondent's counsel announced that respondent would not comply with either alternative in the Administrative Officer's directive. The Administrative Officer then ruled that while he did not have authority to dismiss the charges, he would direct the Board members not to consider the testimony of the four complaining witnesses in reaching their findings, conclusions and recommendation.

In its report to the Commissioner, the hearing panel noted that the sole issue before the panel was the credibility of the

four complaining witnesses. The panel reported that the Administrative Officer had taken the position that the confidentiality provisions of Public Health Law § 230 (11) (a) were "not intended to cover a situation where a person complaining to the Board for Professional Conduct takes the witness stand and testifies against an individual." The hearing panel accordingly recommended "that the Commissioner take whatever legal steps are necessary to permit this Panel to make a full determination on the merits of the charges against the Respondent physician."

Citing Public Health Law § 230 (11) (a), which mandates confidentiality in such proceedings, respondent Commissioner reversed the rulings of his designated Administrative Law Officer which had (a) stricken the testimony of the four complaining witnesses, (b) instructed the committee not to consider their testimony and (c) held respondent's counsel in contempt, and the Commissioner instead remanded the matter to the committee so that they might reconvene and complete the hearing. "The purpose of the confidentiality mandate [in the statute] was to encourage reports of misconduct", wrote respondent. "That purpose is not served by requiring disclosure directly or penalizing the [Commissioner] for failure to disclose by dismissing charges."

Viewing the Commissioner as retaining the authority to review and reverse any and all administrative rulings on evidentiary questions, especially where policy considerations are concerned, Special Term dismissed this article 78 proceeding (132 Misc 2d 980). Petitioner appeals.

Three questions are presented for our consideration on this appeal. At the threshold is the procedural question of whether an article 78 proceeding is appropriate here, to challenge an interlocutory order of the Commissioner. In other words, can the court reach the issue at this point, or is petitioner required to suffer an adverse final administrative ruling (i.e., a determination of misconduct) before resorting to litigation?

Second, the substantive question of law is whether the Administrative Officer has exclusive and unfettered authority to make rulings on issues of law arising during the course of proceedings, or whether the statute reserves to the Commissioner the right of review over such matters. The third question involves the underlying merits: can petitioner cross-examine and discover, within the context of the confidentiality provision of the statute?

## I. REVIEW OF INTERLOCUTORY ORDER

■ While an article 78 proceeding is normally premature where administrative remedies have not been exhausted, one recognized exception is where an interlocutory act of the respondent Commissioner is attacked as unconstitutional and beyond that Administrative Officer's grant of power *(Village of Herkimer v Axelrod,* 88 AD2d 704, 705, *affd* 58 NY2d 1069, citing *Watergate II Apts. v Buffalo Sewer Auth.,* 46 NY2d 52). A license to practice medicine is a valuable property right which, although subject to regulation under the State's police power, may only be denied or withdrawn under procedures consonant with constitutional due process *(Matter of Bender v Board of Regents,* 262 App Div 627, 631; *Benton v Alabama Bd. of Med. Examiners,* 467 So 2d 234 [Ala]; *Commission on Med. Discipline v Stillman,* 291 Md 390, 435 A2d 747; *Aitchison v State,* 204 Md 538, 105 A2d 495, *cert denied* 348 US 880; *In re Buck's License,* 192 Ore 66, 232 P2d 791; *Farney v Anderson,* 56 Ill App 3d 677, 372 NE2d 151; *Campbell v Board of Med. Examiners,* 16 Ore App 381, 518 P2d 1042), just as an attorney's right to practice is protected under constitutional due process *(In re Ruffalo,* 390 US 544). Forcing petitioner to pursue his administrative remedies without adequate discovery regarding the complaining witnesses would arguably undermine and impair the right of confrontation and cross-examination, and result in an unconstitutional deprivation of property without due process of law. Accordingly, this proceeding is a legitimate exception to the doctrine of exhaustion of administrative remedies.

The authorities cited in the dissent are not to the contrary. Thus, in *Young Men's Christian Assn. v Rochester Pure Waters Dist.* (37 NY2d 371), a tax rate proceeding, the statute involved specifically provided for administrative review. (County Law § 266 [1]: "Appeals may be taken from any rate fixing determination of the administrative head or body to the board of supervisors.") No such administrative review of the issue is provided for here.

In *Matter of Wesser v State of New York, Dept. of Health* (94 AD2d 681, *affd* 60 NY2d 785), where the issue was the alleged personal bias or disqualification of the presiding officer, the applicable statute (State Administrative Procedure Act § 303) specifically provides that such issue "shall be a matter subject to judicial review at the conclusion of the adjudicatory proceeding." *(Accord, Matter of Whalen v Slocum,* 84 AD2d 956.) There is no such provision here.

In *Anonymous v Axelrod* (92 AD2d 789), a declaratory judgment action to invalidate a subpoena duces tecum, it was held that the appropriate procedure was a motion to quash under CPLR 2304, which requires a prior formal request to the issuing authority to modify or withdraw the subpoena. This has nothing to do with the issue here presented, viz., the authority of the Commissioner to overrule the evidentiary ruling of the duly appointed Administrative Law Officer.

Equally inapposite is *Matter of Sardino v Finch* (35 AD2d 686), where the subjects of a police disciplinary proceeding sought in advance to have the court establish procedures for the conduct of their departmental hearing. It was held that the judicial proceeding should have been dismissed as premature. There is no indication that an application for such relief had first been made to the administrative agency, as is the situation in the case before us.

## II. FUNCTION OF ADMINISTRATIVE LAW OFFICER

■ The provision in Public Health Law § 230 (10) (e) mandating the designation of an Administrative Law Officer as a nonvoting member of a committee on professional conduct was added to the statute in 1980 (L 1980, ch 866, § 11). That legislative enactment amended the Education Law and the Public Health Law, *inter alia,* by substituting the Department of Health for the Attorney-General in prosecuting license revocation cases *(see,* Governor's mem, 1980 McKinney's Session Laws of NY, at 1919). It was this amendment that added the requirement for an Administrative Law Officer, designated by the Commissioner, who would "have the authority to rule on all motions, procedures and other legal objections" (Public Health Law § 230 [10] [e]). Since the Commissioner was in effect taking over the prosecutorial role formerly filled by the Attorney-General, the clear implication is that the Legislature intended that the Administrative Law Officer be independent of the Commissioner's control in making his rulings. In 1984, this independent authority was strengthened and clarified when the Legislature further amended subdivision (10) (e) to emphasize the Administrative Officer's "authority to rule on objections to questions posed by either party or the committee members." (L 1984, ch 1005, § 3.) Nowhere in the statute is there any contrary indication as to the Administrative Officer's ability to function independently of control by the Commissioner. The only legislative reference to the Commissioner

vis-à-vis the Administrative Officer concerns the power to designate. With regard to the issuance of rulings, the Commissioner's function is limited to making his own recommendation, which amounts to an endorsement of approval or disapproval, in forwarding the committee's findings, conclusions and recommendation which have been prepared by the Administrative Officer. Thus, respondent's reversal of these evidentiary rulings by the Administrative Officer amounted to exceeding the scope of the Commissioner's statutory authority.

Respondent urges that the committee's report itself opened the door for the Commissioner by inviting him to issue his own oversight ruling. The committee had recommended that the Commissioner take "whatever legal steps * * * necessary" to allow the panel to make a determination of the charges on the merits. If there is ambiguity in that recommendation, three interpretations are possible:

(1) the committee was inviting respondent to overrule the Administrative Law Officer;

(2) the committee was urging respondent to change his mind and go along with the Administrative Law Officer; or

(3) the committee was leaving it up to respondent to do what he saw fit under the circumstances.

The first interpretation, which is advanced by respondent, must be rejected as unrealistic. The Administrative Officer was responsible for drafting the committee's report and recommendations, so it is highly unlikely that his advice to the committee would have been to recommend that the Commissioner overrule the Officer's own administrative rulings. The third interpretation would include the option that the Administrative Law Officer had earlier extended to respondent's counsel, namely, to seek a protective order against his disclosure ruling. Short of that, the only reasonable interpretation of the committee's recommendation had to be that the committee wanted the Commissioner to break the stalemate and permit the limited disclosure sought. Respondent's attempt to reverse the Administrative Officer's ruling was an effort to redefine the parameters of the hearing, which was a usurpation of the functions specifically assigned to the Administrative Officer by the Legislature.

Nor is judicial intervention at this juncture an attempt to abort the adjudicatory process or to prevent the responsible licensing authority from proceeding with the statutory mandate, as asserted in the dissent. It is merely sought to prevent

the Commissioner from exercising authority that he does not have. He is nowhere given authority to make or overrule evidentiary rulings of the Administrative Law Officer, upon whom the Legislature has specifically conferred such authority. The cases cited in the dissent are not to the contrary. Thus, in *Matter of Rainka v Whalen* (73 AD2d 731, *affd* 51 NY2d 973) and *Matter of State Bd. of Professional Med. Conduct v Schlesinger* (84 AD2d 879), the issue was whether the dentist in *Rainka* and the doctor in *Schlesinger* were entitled to bills of particulars in advance of the administrative proceedings, plainly a far cry from precluding cross-examination on an essential element of the case against the doctor here, involving due process rights. Equally inapposite is *Matter of Wesser v State of New York, Dept. of Health (supra)*, as previously noted. Due process is plainly at issue here.

### III. DUE PROCESS OF LAW AND THE RIGHT OF CONFRONTATION

Once we clear the hurdles of these threshold procedural and substantive questions of law, the underlying merits of the issue are relatively simple. Petitioner does not seek a full public disclosure of the complaints, so as to embarrass or otherwise compromise the complainants. Rather, he seeks the basic right to confront his accusers with a modicum of preparation with regard to these complaints about acts which allegedly took place from 5 to 15 years earlier. Regardless of the informality of an administrative hearing, with its relaxation of rules of evidence and procedure, "no essential element of a fair trial can be dispensed with unless waived. That means, among other things, that the party whose rights are being determined must be fully apprised of the claims of the opposing party and of the evidence to be considered, and must be given the opportunity to cross-examine witnesses, to inspect documents and to offer evidence in explanation or rebuttal" (*Matter of Hecht v Monaghan,* 307 NY 461, 470).

■ Respondent relies upon section 230 (11) (a), which provides confidentiality for any report of professional misconduct by a physician, given to the State Board. Respondent argues that this permits him to protect the confidentiality of any data previously supplied by the complaining witnesses. This is a misinterpretation of the statute. The context of subdivision (11) (a) does not clearly indicate that the purpose of the

confidentiality referred to is to protect the complaining source. Indeed, it would appear that when a complaint is made against a physician, the first concern is to protect the reputation of that professional until such time as charges of misconduct are proven against him. This is especially true in the case where the complaining witnesses have come forward and identified themselves in petitioner's presence. Under such circumstances, it would appear that the complaining witnesses have waived a claim of confidentiality in the face of petitioner's limited request for disclosure *(see, Matter of John P. v Whalen,* 54 NY2d 89, 99). The purpose of the discovery sought by petitioner is not to disseminate any information regarding complainants, but rather to obtain information solely within the confines of the hearing. The statute expressly provides for the safeguarding of any information so disclosed in subdivision (10) *(l),* stating, in part, as follows: "The board or its representatives may examine and obtain records of patients in any investigation or proceeding by the board acting within the scope of its authorization. Unless expressly waived by the patient, any information so obtained shall be confidential and shall not be disclosed *except to the extent necessary for the proper function of the board* and New York state board of regents and the name of the patient may not be disclosed by the board or its employees at any stage of the proceedings unless the patient has expressly consented." (Emphasis added.) This language gives the Board broad discretion in determining what information is "necessary to facilitate an effective investigation and disposition of alleged medical misconduct. Paragraph *(l)* negates any challenge to the Board's authority * * * by expressly providing for the disclosure of such records while simultaneously protecting their confidentiality." *(Matter of Murawski,* 84 AD2d 496, 498.)

Petitioner is not seeking to conduct a fishing expedition through patients' records. All petitioner wants to know is if any of the complainants, having *already testified,* has made a more timely complaint with regard to the allegations. This is a simple due process question. There is no attempt to dampen the incentive for a complainant to come forward. This proceeding is already confidential.

As indicated above, it is not entirely clear that the confidentiality requirement in the statute is designed to protect only the complainant. The statute can also be read as ensuring that it is the target of the investigation who is, at this stage of the proceedings, entitled to the safeguarding of his reputation.

Moreover, the case before us would appear to meet the *John P.* test *(supra),* which requires that petitioner show that the patients have waived confidentiality to the limited extent of appearing and testifying in petitioner's presence at this proceeding. At least for the purposes of this already confidential proceeding, and with respect to the very limited disclosure sought, these complaining witnesses have waived so much of the veil of confidentiality, within the context of the hearing, as concerns prior complaints about petitioner.

The dissent seeks to justify the actions taken here on the ground that procedures in an administrative proceeding are less formal than in a criminal proceeding. Whatever the merits of that proposition, it has long been held that it cannot preclude the obligation to produce documents and the right to cross-examination in an administrative proceeding where a license is at stake *(Matter of Hecht v Monaghan, supra).* Nor are the authorities cited in the dissent to the contrary. *Matter of Brown v Lavine* (37 NY2d 317) deals with the right to have assigned counsel in a fair hearing before the Department of Social Services. *Matter of Cole v New York State Dept. of Educ.* (94 AD2d 904, 905, *lv denied* 60 NY2d 556) was a review of proceedings revoking a doctor's license. The court found there was substantial evidence to sustain the determination and did not pass on evidentiary objections. Nothing in the case suggests that evidence was suppressed or that cross-examination was precluded. Those are the issues here.

*Matter of Grattan v People* (65 NY2d 243), cited in the dissent, is equally inapposite. A Grand Jury subpoena was quashed because it sought records in connection with a criminal investigation which the court held might discourage people from seeking assistance and treatment with respect to communicable diseases. This has nothing to do with the right of an accused to confront and cross-examine his accusers where the complainants are known and have already testified in the presence of the accused. Complainants' identities have already been disclosed, contrary to the implication in the dissent.

*Matter of Levin v Guest* (112 AD2d 830, *affd* 67 NY2d 629, *cert denied* — US —, 106 S Ct 2894), also cited in the dissent, speaks merely to the sufficiency of a showing necessary to prevent the quashing of a subpoena issued by the Board in a proceeding against a doctor. The subpoena called for production of certain specified records of the doctor. No question of cross-examination or confrontation at a hearing was involved.

Again, it must be emphasized that we are here not addressing disclosure to the public, which concerned the *John P.* court, and which certainly could be a deterrent to complaints of misconduct in the future. Here, the witnesses have already come forward to testify in petitioner's presence. Within the context of these confidential proceedings, what further protection could these witnesses reasonably require in refusing to answer whether they made fresh complaints about petitioner?

Accordingly, the judgment (denominated an order) of Supreme Court, New York County (Eugene R. Wolin, J.), entered June 30, 1986, insofar as it dismissed the petition, should be reversed, on the law, respondent's determination overruling the Administrative Law Officer should be annulled, and the matter should be remanded to respondent for a determination either to direct the limited disclosure called for by the Administrative Law Officer, or to dismiss the charges against petitioner, without costs. So much of the order as granted the sealing of this file and permitted petitioner to proceed anonymously should be affirmed, without costs.

SULLIVAN, J. (dissenting). By this CPLR article 78 proceeding, petitioner, a psychiatrist, challenges an order of the Commissioner of Health of the State of New York reversing the ruling of the Administrative Officer at a hearing of the New York Board for Professional Medical Conduct which struck the testimony of the complaining witnesses, petitioner's former patients, who, in accordance with explicit statutory provisions prohibiting disclosure of such information, refused to disclose whether they had ever complained to the Board about petitioner's treatment of them. We agree with the court from which this appeal is taken that the Commissioner acted within his statutory authority when he reversed the Administrative Officer's ruling and remanded the matter for completion of the hearing.

The Board, an agency of the New York State Department of Health consisting of no less than 18 physicians and 7 lay members and created pursuant to Public Health Law § 230, is charged with the investigation, on its own or upon receipt of a complaint, of suspected professional misconduct and the conduct of disciplinary proceedings. The reports of its investigation are referred to the Director of the Office of Professional Medical Conduct (OPMC), who, after consultation with a professional member of the Board, determines whether a hearing is warranted. If one is, formal charges are filed.

On April 18, 1985, OPMC served petitioner with a notice of hearing and statement of charges accusing him of professional misconduct in that he sexually abused four female patients during the course of treating them, revealed personally identifiable information obtained in a professional capacity without the patient's prior consent and abandoned a patient in need of immediate professional care without making reasonable arrangements for the continuation of such care. Finally, petitioner was charged with failing to retain patient records for at least six years and with engaging in conduct which evidenced moral unfitness to practice the profession of medicine.

A disciplinary hearing was held before a committee of the Board, consisting of four physicians and one lay member, as required by Public Health Law § 230 (6). An attorney designated by the Commissioner served as Administrative Officer, without the right to vote but with authority to "rule on all motions, procedures and other legal objections and [to] draft the conclusions of the hearing committee". (Public Health Law § 230 [10] [e].) Testimony was taken over the course of five days during which four of petitioner's former patients testified that he had sexually abused them. During cross-examination, petitioner's counsel asked each of these former patients whether she had complained to the Board about petitioner's treatment and, if so, the substance and timing of the complaint. Counsel for OPMC objected on the ground that Public Health Law § 230 (11) (a)* prohibited disclosure of any information regarding complaints made to the Board. In response, petitioner's counsel argued that subdivision (11) (a) was never intended to protect the confidentiality of statements made by patients who give testimony at a disciplinary hearing and that to extend the protection of the statute to those statements would eviscerate his right of cross-examination and constitute a denial of due process. The Administrative Officer agreed, ruling that petitioner's counsel was entitled to inquire as to whether the witnesses had made complaints to

---

* In pertinent part, Public Health Law § 230 (11) (a) provides: "The medical society of the state of New York * * * shall, and any other person may, report to the board any information which such person, medical society, organization or institution has which reasonably appears to show that a physician is guilty of professional misconduct * * * Such reports shall remain confidential and shall not be admitted into evidence in any administrative or judicial proceeding except that the board, its staff, or the members of its committees may begin investigations on the basis of such reports and may use them to develop further information."

the Board, and if they had, to the production of any such complaints which were in writing. The matter was adjourned one month to allow OPMC's counsel to comply with the ruling or to seek judicial relief therefrom.

When, on the adjourned date, OPMC's counsel refused to produce the requested documents and persisted in instructing the witnesses not to answer any questions regarding complaints made to the Board, the Administrative Officer struck the testimony of the four witnesses and instructed the committee to disregard the stricken testimony. As a result, the committee was unable to render a final determination of the charges, and turned to the Commissioner for direction, stating:

"It is the conclusion of the Hearing Committee that based on the ruling of the Administrative Law Judge that *[sic]* the Panel cannot render a final determination at this time because the testimony of the four Petitioner's witnesses was not admissible for consideration * * *

"In view of the foregoing, it is the recommendation of the Hearing Panel that the Commissioner take whatever legal steps are necessary to permit this Panel to make a full determination on the merits of the charges against the Respondent physician."

The Commissioner reversed the Administrative Officer's ruling, ordered the committee to reconvene, and remanded the matter for completion of the hearing, stating: "Public Health Law § 230 (11) (a) mandates that complaints to the Board shall remain confidential. There is no explicit or implicit exception to that mandate for confidentiality. The purpose of the confidentiality mandate was to encourage reports of misconduct. That purpose is not served by requiring disclosure directly or penalizing the petitioner for failure to disclose by dismissing charges." This proceeding followed. In dismissing the petition, the court, in addition to holding that the Commissioner acted within his statutory authority, also found that since the disciplinary hearing had not yet been completed, review of petitioner's claim that he had been denied his constitutional right of confrontation was premature (132 Misc 2d 980).

The law is well settled that a party must exhaust his administrative remedies before seeking judicial review. *(Young Men's Christian Assn. v Rochester Pure Waters Dist.,* 37 NY2d 371, 375; *Matter of Wesser v State of New York, Dept. of Health,* 94 AD2d 681, *affd* 60 NY2d 785; *Anonymous v Axel-*

*rod,* 92 AD2d 789; *Matter of Whalen v Slocum,* 84 AD2d 956; *Matter of Sardino v Finch,* 35 AD2d 686.) "The doctrine of exhaustion of administrative remedies requires 'litigants to address their complaints initially to administrative tribunals, rather than to the courts, and * * * to exhaust all possibilities of obtaining relief through administrative channels before appealing to the courts' ". *(Young Men's Christian Assn. v Rochester Pure Waters Dist., supra,* at p 375, quoting 2 Cooper, State Administrative Law, at 561.)

After the Administrative Officer struck the testimony of the four complaining witnesses, the hearing committee requested that the Commissioner take whatever steps were necessary so that it could reach a determination on the merits. However one interprets this request, it is clear that the Committee was not accepting the Administrative Officer's ruling as final. The Commissioner, who is mandated by Public Health Law § 230 (10) (i) to "consider the transcript, exhibits and other evidence, if any, the findings, conclusions and recommendation of the committee and [to] make his recommendation as to the committee's findings, conclusions and recommendation" to the Board of Regents for a final decision and order, responded by instructing the committee on an evidentiary matter, and remanding the case for completion of the hearing. Thus, a final determination of the charges has yet to be reached. Petitioner has merely been precluded from examining the four witnesses as to any prior complaints to the Board. His counsel may still cross-examine those witnesses on any other matter.

In such circumstances, petitioner should not, by this premature proceeding, be permitted to abort the adjudicatory process and thereby prevent the responsible licensing authority from proceeding pursuant to its statutory mandate under Education Law § 6510-a. *(See, Matter of Rainka v Whalen,* 73 AD2d 731, *affd* 51 NY2d 973; *Matter of Wesser v State of New York, Dept. of Health,* 94 AD2d 681, *supra; Matter of State Bd. of Professional Med. Conduct v Schlesinger,* 84 AD2d 879.) He is in no danger of losing his right to practice unless the Board of Regents issues an order revoking his license. The committee should be allowed to proceed on the merits and make "findings, conclusions and recommendation" which would, pursuant to Public Health Law § 230 (10) (i), be submitted to the Commissioner for his review and recommendation to the Board of Regents. Should the committee recommend the revocation of petitioner's license, he would be afforded the administrative review to which he is entitled under the applicable

law and regulations. Any final adverse determination is, of course, subject to judicial review. (Education Law § 6510-a [4].)

In any event, the Commissioner acted within the scope of his statutory authority in reversing the Administrative Officer's ruling and remanding the matter for completion of the hearing. Public Health Law article 2 (§ 200 *et seq.*) vests broad power in the Department of Health and the Commissioner to supervise and regulate all aspects of public health and to enforce the Public Health Law. While the statute is silent as to the Commissioner's role in a situation where, as here, the committee is unable to render a final determination and turns to him for direction, as the person authorized to protect the public health and enforce the statutes, the Commissioner acted appropriately in the circumstances. He cannot be bound by the evidentiary rulings of his designee, the Administrative Officer, especially on a matter with broad policy implications. Public Health Law § 230 (10) (e), which authorizes the appointment of an attorney as an Administrative Officer at disciplinary hearings and enumerates his powers, is not a limitation on the Commissioner's authority but, rather, the mechanism by which that authority is delegated to his appointee. Since the Commissioner had the power to "make his recommendation as to the committee's findings, conclusions and recommendation" (§ 230 [10] [i]), he could have disregarded the ruling and considered the stricken testimony in arriving at his own recommendation, had the committee followed the Administrative Officer's ruling and dismissed the charges.

Nor can we conclude that the Commissioner acted improperly in upholding the confidentiality provisions of the Public Health Law with respect to complaints of professional misconduct made to the Board. In conferring confidentiality on such complaints, Public Health Law § 230 (11) (a) does not provide any exception to its proscription against their admission in evidence in any administrative or judicial proceeding. Petitioner's claim of waiver of confidentiality relies primarily on the general principle that an accused in a criminal prosecution has a constitutional right to confront witnesses against him through cross-examination. Petitioner's reliance is misplaced, however, since the procedures in an administrative proceeding are less formal than in a criminal prosecution. *(See, Matter of Brown v Lavine,* 37 NY2d 317; *Matter of Cole v New York State Dept. of Educ.,* 94 AD2d 904, 905, *lv denied* 60 NY2d 556.)* By express statutory provision (Public Health Law

§ 230 [10] [f]), the committee is not bound by the rules of evidence, and its conclusion need be based only on a preponderance of the evidence.

Even in a criminal prosecution, however, with its stricter standard of due process and higher burden of proof, confidential matters are excluded from the requirement that a witness' prior statements be made available to the defendant, if relevant to the subject matter of the witness' testimony. *(People v Rosario,* 9 NY2d 286, *cert denied* 368 US 866.) Moreover, it should be noted, the Commissioner's order did not foreclose cross-examination of the complaining witnesses, but only restricted its scope by proscribing inquiry into any complaints made to the Board. Questioning with respect to complaints made to any other institution, agency, or person was permitted as well as cross-examination on all other relevant issues. In fact, cross-examination was quite extensive, encompassing over 400 pages of the hearing transcript. Thus, from all that appears, petitioner had ample opportunity to cross-examine the complaining witnesses as to the crucial issue of whether he engaged in sexual misconduct with them.

The Court of Appeals was recently confronted with a similar statutory confidentiality provision in *Matter of Grattan v People* (65 NY2d 243). The question there was whether the statutory confidentiality with respect to information regarding sexually transmissible diseases was defeated simply by the consent of the source, the disease sufferer, to the release of the information. The Department of Health moved to quash a Grand Jury subpoena seeking the information on the basis of Public Health Law § 2306, which provides: "All reports or information secured by a board of health or health officer under the provisions of this article shall be confidential except in so far as is necessary to carry out the purposes of this article." The People argued that the information was relevant on the issue of whether a crime had been committed and, further, that it was needed to refresh the victim's recollection. The court balanced the victim's right to her own records against society's interest in preventing the spread of disease and quashed the subpoena, finding:

"The requirement of confidentiality (Public Health Law § 2306) is integral to a statutory scheme designed to encourage afflicted persons to seek and secure treatment, which in the case of communicable disease serves individual interests as well as those of society * * *

"[T]he assurance of secrecy offered by the Board of Health not only encourages an individual disease sufferer to come forward for treatment but also fosters a public perception that necessarily results in a greater willingness of others to cooperate. We therefore conclude that, in view of the public interest that the program have the appearance of inviolable trust, an individual's consent to release of records will not in every case be sufficient to override the statutory confidentiality" *(supra,* at pp 245-246).

The rationale underlying the strict adherence to the statutory confidentiality in *Grattan (supra)* should apply with equal if not greater force in a medical misconduct proceeding, where the State's interest in rooting out professional misconduct is at least as significant as it is in the area of combating the spread of communicable disease. Disclosure of complaints to the Board would be detrimental to the enforcement of the Public Health Law and inimical to the public interest. Revealing a complainant's identity has the potential to discourage others, both patients and professional personnel, from contacting and cooperating with the Board when they have valuable information about a physician's professional misconduct. *(See, Matter of Levin v Guest,* 112 AD2d 830, *affd* 67 NY2d 629, *cert denied* — US —, 106 S Ct 2894.) In enacting section 230 (11) (a), the Legislature confronted this problem and determined that the benefits to society in encouraging complaints of professional misconduct through the grant of confidentiality and the exclusion of any such complaints from evidence in any administrative or judicial proceeding outweighed other considerations. *(See, Matter of John P. v Whalen,* 54 NY2d 89, 97.)

Given the strong public policy considerations underlying the confidentiality provisions of the Public Health Law and the circumstances in which the issue is presented, we cannot conclude that the Commissioner's determination to uphold the confidentiality of any complaints made to the Board was irrational, even though the complainants had come forward and testified in petitioner's presence. Petitioner's claim of deprivation of due process can be assessed only in the context of a full and complete record and after a final adverse determination has been reached on the merits.

Accordingly, the judgment (denominated an order) dismissing the petition should be affirmed.

KASSAL and ROSENBERGER, JJ., concur with FEIN, J.; SANDLER, J. P., and SULLIVAN, J., dissent in an opinion by SULLIVAN, J.

Judgment (denominated an order), Supreme Court, New York County, entered on June 30, 1986, reversed, on the law, respondent's determination overruling the Administrative Law Officer annulled, and the matter remanded to respondent for a determination either to direct the limited disclosure called for by the Administrative Law Officer, or to dismiss the charges against petitioner, without costs and without disbursements. So much of the order as granted the sealing of this file and permitted petitioner to proceed anonymously is affirmed, without costs and without disbursements.