OPINION OF THE COURT
Karla Moskowitz, J.
This CPLR article 78 proceeding seeks a judgment vacating an advisory opinion (No. 665) issued by the respondent Board of Ethics on November 26, 1985. Respondent cross-moves to dismiss for failure to state a cause of action.
Petitioner N is a developer of shopping centers and commer *635 cial facilities, particularly in Staten Island. He is the president and sole shareholder of petitioner corporation. The Board of Ethics is a municipal agency established pursuant to section 2600 et seq. of the New York City Charter.
In 1979, N located a site on Staten Island (the corporate site) which he believed could be developed as a shopping, commercial and office complex for the South Richmond area. N reviewed the proposed project with the then Borough President of Staten Island, Anthony Gaeta. Gaeta approved of the location and the fact that the project would bring significant economic development to the area. Gaeta then offered to assist N in the negotiation procedures to acquire the site from the owner, the City of New York. Gaeta assigned the then Deputy Borough President (now Borough President) Ralph Lamberti as his representative to communicate with various city officials in support of the project. Apparently, both Lamberti and Gaeta attended a number of meetings with city officials. On March 23, 1984, N, through the corporation, and the city, through the Public Development Corporation (PDC), entered into a contract under which the corporation was to acquire a 50-acre site from the PDC. Closing was set for September 23, 1986. N claims that in the interim he expended more than $500,000 in connection with the preclosing conditions (permits, plans, etc.).
The instant dispute arises out of Lamberti’s participation in a land investment together with N. In 1981, Lamberti, who was a personal friend of N, told N that the St. Charles seminary wished to sell a portion of its property (known as the Copperflagg property). N then contracted with the seminary to purchase the property for the purpose of reselling building lots. Lamberti then asked N if he (Lamberti) could invest in the property. According to N, he told Lamberti that he would be interested in having him as an investor provided that there were no legal or ethical prohibitions against the investment. It was agreed, petitioner states, that Lamberti’s participation would be limited to investment for purposes of reselling building lots; the rationale was that once a developer decided to build anything on the lots, zoning questions would arise and Lamberti, as a governmental official, could have a conflict of interest. Lamberti informed Gaeta of his intended investment and, according to petitioners, Gaeta did not see any conflict of interest.
Lamberti then asked the respondent Board of Ethics to rule *636 upon whether or not the investment would be proper. On or about July 15, 1982, Lamberti received a letter from Judith Grad, counsel to the Board of Ethics, stating that Lamberti’s transaction with N and ownership of stock in the Copperflagg Corp. did not constitute a conflict of interest. N claims, in effect, that he permitted Lamberti’s investment in the Copperflagg project in reliance upon the Board of Ethics opinion. Lamberti made the investment but allegedly withdrew his participation in 1982 to avoid a conflict of interest when the city sought landmark designation for the site.
On April 21, 1985, an article appearing in the Daily News reported Lamberti’s business relationship with N involving the Copperflagg site as well as Lamberti’s lobbying efforts on behalf of N’s plans to develop the corporate site. The article suggested that Lamberti engaged in unethical conduct by using his official position to benefit himself and N.
On April 22, 1985, Lamberti asked the New York City Department of Investigations (DOI) to conduct an investigation into the allegations raised in the Daily News article. After taking testimony, interviewing witnesses and reviewing documents, DOI issued a report which concluded that Lamberti had violated conflict of interest provisions of the City Charter by using his official position to represent private business interests and had improperly opposed landmark designation for Copperflagg while he still had a financial interest in the project. The DOI findings were reported in the major area newspapers in articles which specifically mentioned N. In September 1985, a Grand Jury was impaneled in Staten Island to consider evidence regarding Lamberti’s conduct. On October 24, 1985, the Grand Jury voted "no true bill” with respect to Lamberti.
Petitioner states that he then learned through his counsel that despite the Grand Jury’s findings the Board of Ethics intended to issue a new opinion regarding Lamberti’s participation in the Copperflagg project. Petitioner’s counsel, Samuel Yasgur, met with Judith Grad, the Board of Ethics counsel. Yasgur requested that his client be given a hearing before the Board, on the ground that a revised opinion would affect N’s reputation. The Board, however, refused to grant a hearing, because the opinion related to the conduct of Lamberti, a municipal official, rather than the conduct of N. Moreover, N would not be harmed by a revised Board opinion inasmuch as the allegations concerning him had been widely reported by the press. Yasgur claims that he was never given a copy of the proposed revised opinion even though Lamberti was permitted *637 to see the opinion. Respondent points out, however, that Yasgur never specifically requested that the Board redact N’s name from the revised opinion.
On November 26, 1985, the Board of Ethics issued opinion No. 665, which holds that "given his other official involvements with the [corporate] site, Mr. Lamberti should not have made the investment in Copperflagg in the first place [and] having made that investment * * * should not subsequently have participated in governmental meetings with respect to either Copperflagg or [the corporate site]”. According to the Board, it had issued the 1982 opinion based upon a less than candid disclosure of the facts. According to the opinion, Lamberti told the Board about his proposed investment in Copperflagg and his personal friendship with N but did not reveal his extensive involvement in lobbying for the corporate project. Had the Board known the true facts, the 1982 opinion would have been different.
The new Board opinion concluded that Lamberti’s conduct, taken as a whole, violated section 2604 of the Code of Ethics (NY City Charter § 2604), which states that a municipal employee shall not have any financial interest which is in conflict with his official duties and shall not use his position to obtain financial gain for himself or any person with whom he is associated. The opinion specifically mentioned Lamberti’s involvement with N although it stated, on page 7, that "as to Mr. N, the Board of Ethics has no basis for making a finding as to whether Mr. N knew or should have known that Mr. N’s conduct might involve improprieties under the Code.”
After the Board of Ethics revised opinion was issued, the PDC sought to cancel the contract for sale of the corporate site, based in part (petitioner claims) on the Board of Ethics findings of unethical conduct. Petitioners then instituted an action in Richmond County Supreme Court (N v City of New York, index No. 837-86) in connection with the PDC’s purported cancellation of the corporate site sale. In addition, petitioners brought on the instant article 78 proceeding, seeking a judgment directing the Board of Ethics to vacate its November 1985 opinion. The instant action was originally brought in Richmond County; venue was changed to New York County pursuant to court order.
Petitioners maintain that the refusal of the Board to fur *638 nish petitioner with a copy of the proposed opinion, taken together with the refusal to grant petitioners a hearing, constitute a denial of due process under both the Federal and State Constitutions. In addition, petitioners maintain that under section 2602 of the New York City Charter, the Board should have published its opinion with deletions of names of involved parties.
The respondents maintain that an advisory opinion of the Board of Ethics is not a "final determination” reviewable by means of an article 78 proceeding, that petitioners lack standing to institute this proceeding because the opinion related to Lamberti rather than to them, and that the proper remedy, if any, for claims for loss of reputation is an action for defamation rather than an article 78 proceeding.
Where a person’s property rights are threatened by an agency proceeding against a third party, he must be given the full rights of a party if he seeks to intervene (see, Pepsico, Inc. v Federal Trade Commn., 472 F2d 179). Where as here the agency lacks a specific set of procedures for dealing with a case, there may well be a denial of due process (cf., Holmes v New York City Hous. Auth., 398 F2d 262).
Section 2602 of the New York City Charter states:
"Advisory opinions. — a. The board of ethics shall render advisory opinions with respect to questions of ethical conduct, conflicts of interests and other matters arising under sections twenty-six hundred four [conflicts of interests], twenty-six hundred five [corrupt practices], twenty-six hundred six [political contributions], and twenty-six hundred seven [false reports]. Such advisory opinions shall be rendered on the written request of the officer or employee, former officer or employee concerned or any supervisory official of such officer or employee and in the board’s discretion may be rendered on its own initiative or on the basis of an investigation.
"b. The board of ethics shall make public its advisory opinions with such deletions as may be necessary to prevent disclosure of the identity of any officer or employee or other involved party. The records, reports, memoranda and files of the board shall be confidential and shall not be subject to public scrutiny.” (Amended by Local Laws, 1977, No. 102 of City of New York; Local Laws, 1979, No. 29 of City of New York.)
In this case, it appears that petitioners have been subject to a denial of due process. The city does not refute N’s claim that *639 he permitted Lamberti to invest in the Copperflagg project in reliance upon the 1982 Board opinion. Then, without giving petitioners a chance to be heard or even a chance to view the proposed revised opinion, the Board released an "advisory” ruling that Lamberti’s dealings with N violated the Code of Ethics. Moreover, if the Board intended to render purely an advisory opinion, it could have done so based on hypothetical facts, deleting actual names. Moreover, the opinion was not merely advisory — it named names, and the PDC may well have used the opinion as part of the basis for seeking rescission of the corporate site contract.
Under the circumstances, the Board of Ethics opinion cannot be permitted to stand in its present form. If the opinion can be used as a basis for deprivation of property rights (such as the PDC’s purported cancellation of the corporate site contract), then petitioners are entitled to notice and an opportunity to be heard. (See, Matter of Bender v Board of Regents, 262 App Div 627.) The Board of Ethics had no procedures at all providing for these rights. If the Board merely wished to advise municipal employees of their ethical obligations, the opinion could have been issued without N’s name so that N would not suffer any adverse consequences.
Petitioners do have standing to maintain this proceeding. Although the opinion nominally related solely to Lamberti’s conduct, the implications relating to N’s conduct directly affected his property rights. It was not enough for the Board to state that it was not passing upon the question whether or not N knew or should have known that Lamberti’s conduct was unethical. It may well be that the allegations relating to N were widely reported in the press; however, «the Board of Ethics opinion in effect was an "official” finding of wrongdoing, despite the Grand Jury determination in favor of Lamberti.
The most appropriate remedy here is the issuance of a revised opinion deleting petitioners’ names. The Board need not conduct a hearing prior to the issuance of its opinion; however, if it chooses not to hold a hearing, it cannot make any specific finding of wrongdoing against N. This court is not deciding whether or not the PDC rightfully terminated the corporate site contract for reasons other than the Board of Ethics opinion; that is the subject of a separate proceeding. *640 However, the PDC cannot use the Board of Ethics advisory opinion as a basis for terminating the corporate site contract.
Accordingly, the petition is granted to the extent that the case is remanded to the Board of Ethics for the issuance of a revised opinion No. 665, deleting all references to either N or the corporation. The cross motion is denied.