*4 OPINION OF THE COURT
Hancock, Jr., J.
In this CPLR article 78 proceeding petitioner, the publisher of a Watertown newspaper, seeks an order compelling public access to a disciplinary hearing involving a dentist, a licensed professional supervised by the Board of Regents under article 130 of the Education Law. Supreme Court dismissed the proceeding and the Appellate Division affirmed. Petitioner’s appeal presents two questions:
(1) whether there is a public right of access to such a professional disciplinary hearing under the Federal or State Constitution; and
(2) if not, whether there is a common-law right of access to the proceedings grounded in the public policy of this State.
For reasons which will appear, we answer both questions in the negative and, therefore, affirm.
I
Professional disciplinary proceedings under Education Law § 6510 generally involve a three-part process. At the first stage, the Education Department’s Office of Professional Discipline (OPD) conducts an adversarial hearing on the charges of misconduct (Education Law §6510 [3] [c]). Thereafter, the hearing panel prepares a written report, which includes a recommendation of guilty or not guilty, and, if necessary, a penalty recommendation (§ 6510 [3] [d]). The Regents’ review committee reviews the report and the hearing transcript, and prepares a written report of its own (§ 6510 [4] [b]). The two reports and the hearing transcript are then forwarded to the Board of Regents which renders a final decision (§ 6510 [4] [c]). It is the petitioner’s claimed right of access to the OPD hearing that is at issue on this appeal.
Petitioner Johnson Newspaper Corporation is the publisher of the Watertown Daily Times. In 1988, petitioner sought access to the disciplinary hearing involving a dentist who was *5 charged with misconduct.[1] The OPD refused this request, stating that it was the policy of the Board of Regents to conduct closed professional disciplinary hearings unless the accused professional specifically requested an open hearing. Petitioner thereafter commenced this article 78 proceeding seeking a judgment enjoining enforcement of this policy and declaring professional disciplinary hearings presumptively open to the press and public.
Supreme Court held that professional disciplinary hearings are not presumptively open. It reasoned that the general policy favoring open administrative hearings did not apply in the disciplinary context where different considerations favor confidentiality. Supreme Court also concluded there was no constitutional right of public access to such hearings. The Appellate Division, with one Justice dissenting, affirmed in an opinion (see, Matter of Johnson Newspaper Corp. v Melino, 151 AD2d 214).
II
In addressing petitioner’s argument that there is a constitutionally based public right of access to a professional disciplinary hearing (US Const 1st Amend), the Appellate Division applied what it described as the Supreme Court’s two-tiered test. The test, the court stated, quoting Press-Enterprise Co. v Superior Ct. (478 US 1), "includes 'whether the place and process have historically been open to the press and general public’ and 'whether public access plays a significant positive role in the functioning of the particular process in question’ (supra, at 8).” (Matter of Johnson Newspaper Corp. v Melino, supra, at 216.) The Appellate Division concluded that there is no First Amendment right of access inasmuch as there is "no historical basis for open professional disciplinary hearings” (id., at 216) and no showing that "the public played a significant role in the licensing or policing of professionals.” (Id., at 216.) Petitioner’s primary contention here is that the first step in the Appellate Division’s analysis — whether there exists an historical tradition of openness — is no longer a valid criterion of whether access is protected by the First Amendment. We disagree and conclude that the test as applied by the Appellate Division remains valid.
The two most recent Supreme Court opinions dealing with *6 the First Amendment right of access are Press-Enterprise Co. v Superior Ct. of Cal. (Press-Enterprise I) (464 US 501 [upholding First Amendment right of access for voir dire proceeding in a criminal trial]) and Press-Enterprise Co. v Superior Ct. (Press-Enterprise II) (478 US 1, supra [First Amendment right of access for preliminary hearing in criminal case]). There is no basis in either opinion for concluding that the Supreme Court no longer relies on the historical tradition of access as a significant consideration in determining whether a particular proceeding should receive First Amendment protection.
On the contrary, in Press-Enterprise I, Chief Justice Burger, writing for eight members of the Court, resummarized the thorough exigesis given in his plurality opinion in Richmond Newspapers v Virginia (448 US 555 [upholding First Amendment right of access to criminal trials generally]) concerning the tradition of access as developed in the evolution of the Anglo-American criminal jury trial from its earliest roots in pre-Norman England. The Court determined that the convention of openness — which it had earlier held in Richmond Newspapers v Virginia (supra) and Globe Newspaper Co. v Superior Ct. (457 US 596) existed for criminal trials generally —applied, as well, to the jury selection process. In so holding, the Court in Press-Enterprise I observed that the "historical evidence” reveals that "since the development of trial by jury, the process of selection of jurors has presumptively been a public process with exceptions only for good cause shown.” (464 US, at 505.)
Again, in Press-Enterprise II, Chief Justice Burger, in an opinion for seven members of the Court, noted that the Court in dealing with the First Amendment right of access to criminal proceedings had "emphasized” as one of two complementary considerations "whether the place and process have historically been open to the press and general public.” (478 US, at 8 [emphasis added].) In deciding that preliminary proceedings should be open to the public the Court pointed out that "there has been a tradition of accessibility to preliminary hearings of the type conducted in California.” (478 US, at 10.)
To be sure, as petitioner notes, there are indications in some cases that the tradition of openness should not be treated as an important factor in determining whether there is a First Amendment right of access to a particular type of proceeding (see, e.g., Globe Newspaper Co. v Superior Ct., supra, at 605, n 13; United States v Criden, 675 F2d 550, 555 [3d Cir 1982] *7 [access to pretrial criminal proceedings]; United States v Chagra, 701 F2d 354, 363 [5th Cir 1983] [access to bail reduction hearings]; Newman v Graddick, 696 F2d 796 [11th Cir 1983] [hearings in class action involving overcrowding of prisons]). But many of these decisions predate Press-Enterprise I and Press-Enterprise II in which the court now seems clearly to have settled on a two-part test which gives full effect to the historical component (see, Note, What Ever Happened To The Right To Know?: Access To Government-Controlled Information Since Richmond Newspapers, 73 Va L Rev 1111, 11181122).
The Supreme Court has yet to hold that there is a First Amendment right of access to civil judicial trials (but see, Richmond Newspapers v Virginia, supra, at 580, n 17 ["that historically both civil and criminal trials have been presumptively open”]; Gannett Co. v DePasquale, 443 US 368, 386, n 15 ["(f)or many centuries, both civil and criminal trials have traditionally been open to the public”]). Some Federal Courts of Appeals, however, have held that there is a constitutional right of access to civil trials and, in doing so, have relied specifically on the historical tradition of openness (see, e.g., Publicker Indus. v Cohen, 733 F2d 1059, 1066-1070 [3d Cir 1984] [hearings on motions in corporate litigation]; Brown & Williamson Tobacco Corp. v Federal Trade Commn., 710 F2d 1165, 1178 [6th Cir 1983], cert denied 465 US 1100 [suit against FTC challenging proposed changes in testing procedures]; Westmoreland v Columbia Broadcasting Sys., 752 F2d 16, 23 [2d Cir 1984], cert denied sub nom. Cable News Network v United States Dist. Ct., 472 US 1017 [upholding First Amendment right to attend civil trials but rejecting right to televise trials as "a leap that is not supported by history”]). The one case cited by petitioner dealing with access to administrative proceedings (Society of Professional Journalists v Secretary of Labor, 616 F Supp 569 [D Utah 1985], appeal dismissed and judgment below vacated and remanded as moot 832 F2d 1180 [10th Cir 1987]) does not support the proposition that the historical tradition of openness is without significance. Indeed, the court specifically noted that "to the extent that there is a tradition of holding this type of hearing, there is a tradition that the hearings have been open to the public.” Id., at 575.)
 Here, because there is no suggestion that professional disciplinary hearings have any tradition of being open to the public and no showing that the public access plays "a signifi *8 cant positive role” in the functioning of the proceedings (Press-Enterprise II, supra, at 8; see infra, at 9-11), we conclude that the Appellate Division properly held that there is no First Amendment right of access. Petitioner argues, nevertheless, that irrespective of the existence of a First Amendment right, we should hold that there is a right of access under the broader protections afforded by our State Constitution (NY Const, art I, § 8). Although our Court has in some cases found our State Constitution to be more protective of expressional freedoms than the Federal Constitution (see, e.g., O’Neill v Oakgrove Constr., 71 NY2d 521, 528-529, 531 [Kaye, J., concurring]), there is no such precedent with respect to the right of access. Petitioner has cited no authority and makes no persuasive argument for the proposition that our State Constitution affords a protected right of access to disciplinary hearings, and we decline to so hold.
Ill
Petitioner argues that, notwithstanding the absence of a Federal or State constitutional right, a presumptive right of access to professional disciplinary hearings exists in the common law of this State. It relies principally on Matter of Herald Co. v Weisenberg (59 NY2d 378) where the Court held that unemployment compensation hearings should be presumptively open. There, the Court discerned no basis "for setting aside the strong public policy in this State of public access to judicial and administrative proceedings” (id., at 381) and noted specifically that there is nothing in the statutes or departmental regulations governing unemployment compensation hearings suggesting that they should be closed. The Court reasoned: "That section 537 concerns only disclosure of information acquired through the reporting requirements of article 18, and not closure of hearings, is emphasized by the language of the provisions dealing with hearings. Section 622 and the regulation promulgated thereunder (12 NYCRR 461.4) set forth in some detail the procedures and rules to be followed at such hearings, yet neither mentions closure. In light of the failure of either the Legislature or the commissioner to provide for closing unemployment compensation hearings, it would be inappropriate to read into section 537 a blanket order of closure. Moreover, this conclusion is consistent with the position of the Department of Labor on this appeal that it had no objection to the presence of the press at the hearing, *9 as well as with the long-standing position of the Attorney-General (1959 Opns Atty Gen 80).” (Id., at 382-383.)
The rationale of Weisenberg, we believe, leads to the conclusion that professional disciplinary hearings held pursuant to Education Law § 6510 are not presumptively open. In Weisenberg, not only was there nothing in the statute or regulations indicative of a policy of confidentiality, but the posture of the Commissioner of Labor and the long-standing position of the Attorney-General (1959 Opns Atty Gen 80) were supportive of a policy of public access to such hearings. Here, by contrast, the applicable statute (see, Education Law § 6510 [8])[2] manifests a governmental policy of preserving the confidentiality of information pertaining to disciplinary proceedings until a determination has been reached. The same policy of confidentiality is reflected in analogous statutes pertaining to disciplinary proceedings in the legal profession (see, Judiciary Law § 90 [10]), the medical profession (see, Public Health Law § 230 [10], [11] [a]; Education Law § 6510-a), and to disciplinary hearings conducted by the State Commission on Judicial Conduct (see, Judiciary Law § 44 [4]).
Moreover, in the case of professional disciplinary hearings conducted under article 130 of the Education Law, as distinguished from unemployment compensation hearings held under article 18 of the Labor Law (see, Matter of Herald Co. v Weisenberg, supra, at 383), the established policy of the Board of Regents has been to keep the proceedings private until final determination unless the respondent requests otherwise. And the difference in the policy considerations underlying professional disciplinary hearings and unemployment compensation hearings is displayed in the contrasting conclusions reached by the Attorney-General to the effect that unemployment compensation hearings should be open (1959 Opns Atty Gen 80 [Feb. 16, 1959]) while in professional disciplinary proceedings predecisional materials may be withheld under the Free *10 dom of Information Law (1984 Opns Atty Gen 49, No. 84-F14 [Dec. 3,1984]).
Petitioner points out, nevertheless, that there is no specific statutory or regulatory requirement that professional disciplinary hearings be closed and argues that in the absence of such requirement we should give effect to the prevailing State policy by ordering that hearings of this kind be open. It is true that Education Law § 6510 (8) imposes a requirement of confidentiality on the files of the department concerning possible instances of professional misconduct or unlawful practice and not on the actual conduct of hearings. But under statutes prescribing disciplinary procedures in analogous contexts, the existence of a requirement for confidential hearings has been assumed despite a similar absence of any specific provision mandating closure[3] (see, Matter of Capoccia, 59 NY2d 549, 553 [attorney’s request that hearing be open should be granted in absence of good cause shown where attorney has expressly waived confidentiality requirement]; Matter of Lazachek v Board of Regents, 101 AD2d 639, 641, lv denied 63 NY2d 608 [holding, by implication that medical doctor has a right to a closed disciplinary hearing]; Matter of Doe v Axelrod, 123 AD2d 21, 30, revd on other grounds 71 NY2d 484 [recognizing that the patient as well as the physician has an interest in insuring confidentiality of the disciplinary proceedings]; see also, Sinicropi v County of Nassau, 76 AD2d 832, lv denied 51 NY2d 704 [materials pertaining to disciplinary proceedings against probation officer including hearing transcript exempt under Freedom of Information Law (Public Officers Law § 87 [2] [g] [iii]) as intraagency predecisional memoranda]).
We conclude that our statutes and case law reflect a policy of keeping disciplinary proceedings involving licensed professionals confidential until they are finally determined. The policy serves the purpose of safeguarding information that a potential complainant may regard as private or confi *11 dential and thereby removes a possible disincentive to the filing of complaints of professional misconduct (see, Matter of Doe v Axelrod, 123 AD2d 21, 29-30, 36-38 [Sullivan, J., dissenting], revd on other grounds 71 NY2d 484, supra; Landmark Communications v Virginia, 435 US 829, 835-836). The State’s policy also evinces a sensitivity to the possibility of irreparable harm to a professional’s reputation resulting from unfounded accusations — a possibility which is enhanced by the more relaxed nature of the procedures and evidentiary rules followed in disciplinary proceedings in which hearsay evidence may be received. Indeed, our Court has recognized that professional reputation "once lost, is not easily restored.” (See, People ex rel. Karlin v Culkin, 248 NY 465, 478.)
The order of the Appellate Division should, accordingly, be affirmed, with costs.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Bellacosa concur.
Order affirmed, with costs.

. The record does not reveal the precise nature of these charges.

. Education Law § 6510 (8) provides: "The files of the department relating to the investigation of possible instances of professional misconduct, or the unlawful practice of any profession licensed by the board of regents, or the unlawful use of a professional title or the moral fitness of an applicant for a professional license or permit, shall be confidential and not subject to disclosure at the request of any person, except upon the order of a court in a pending action or proceeding. The provisions of this subdivision shall not apply to documents introduced in evidence at a hearing held pursuant to this chapter and shall not prevent the department from sharing information concerning investigations with other duly authorized public agencies responsible for professional regulation or criminal prosecution.” (Emphasis added.)

. Section 90 (10) of the Judiciary Law requires that all papers, records, and documents relating to attorney disciplinary matters be deemed confidential unless either the charges of misconduct are sustained or the Justices of the Appellate Division, upon a showing of good cause, decide to make these materials public. Section 230 of the Public Health Law requires that patient records used in connection with physician disciplinary matters remain confidential unless the patient specifically consents to disclosure (Public Health Law § 230 [10] [l]), and the section also prohibits disclosure of any reports or complaints of misconduct made to the State Board of Professional Medical Conduct (Public Health Law § 230 [11] [a]).