In the Matter of DR. J.P., Appellant, v MARK R. CHASSIN, as Commissioner of Health of the State of New York, et al., Respondents.

Fourth Department, March 12, 1993

### APPEARANCES OF COUNSEL

*Offermann, Mahoney, Cassano, Pigott, Greco & Whalen,* Buffalo *(Francis J. Offermann* of counsel), for appellant.

*Robert Abrams, Attorney-General,* Buffalo *(Patrick O. McCormack* of counsel), for respondents.

### OPINION OF THE COURT

BOEHM, J.

Petitioner Dr. J.P. is a duly licensed physician, specializing in ophthalmology. Since 1977, he has been the subject of several misconduct investigations by respondent New York State Department of Health (DOH). Pursuant to Public Health Law § 230, the investigations have been and are now being supervised by respondent State Board of Professional Medical Conduct (Board). The Board is overseen by DOH. Respondent Mark R. Chassin is the Commissioner of DOH. Respondent C. Maynard Guest is Executive Secretary of the Board, and respondent Kathleen M. Tanner is Director of the Board's Office of Professional Medical Conduct.

Petitioner commenced this CPLR article 78 proceeding, seeking to enjoin respondents from disclosing information with respect to any disciplinary proceedings involving him until finally determined. Supreme Court denied the requested relief and dismissed the petition.

Petitioner contends that the statutory and decisional law of this State mandate that professional disciplinary proceedings remain confidential until a final determination is made. In response, respondents argue that confidentiality applies only to the investigatory stages and that the proceedings are a matter of public record, with some exceptions not relevant here, once charges are filed.

The question raised by this appeal is whether information relating to medical disciplinary proceedings should be confidential until a final determination is made. We conclude that it should.

I

Prior to July 26, 1991, the process for disciplining physicians was set forth in Public Health Law § 230 and Education Law § 6510-a. DOH was responsible for investigating and prosecuting physicians. The Board was responsible for conducting administrative hearings on charges of misconduct and for making a report and recommended disposition. The Commissioner of Health was responsible for reviewing the Board's report and for making a recommended disposition to the New York State Board of Regents of the Department of Education, which then made a final determination.

On July 26, 1991, Public Health Law § 230 was amended and Education Law § 6510-a was repealed (L 1991, ch 606). That legislation streamlined the adjudication of professional medical disciplinary proceedings by eliminating review of individual cases by the Commissioner of Health and by eliminating several levels of review by the Board of Regents. It further placed strict time limits on the conduct of professional medical conduct cases, provided for increased involvement of physicians in investigations and codified procedural safeguards for physicians under investigation. The Legislature retained several provisions protecting confidentiality (see, Public Health Law § 230 [9], [11] [g] [vi]), enacted a further provision protecting confidentiality (see, Public Health Law § 10 [a] [v]) and rejected DOH's proposal for a provision mandating open hearings on charges of professional medical misconduct.

## II

Prior to July 26, 1991, DOH conducted three investigations and filed three sets of charges against petitioner, each involving the recommendation or performance of cataract surgery. The first investigation began in July 1977 and ended when charges were withdrawn in August 1991 (case No. 1). The second investigation began in January 1983 and ended in a dismissal of charges in May 1991 (case No. 2). There having been final determinations, neither case No. 1 nor case No. 2 is implicated in this proceeding.

The third investigation began in July 1983 (case No. 3). After a hearing in case No. 3, supervised by an Administrative Law Judge, the Board recommended that petitioner's license be revoked and that he be fined. The Commissioner of Health concurred and forwarded his recommendation to the Board of Regents in December 1987. In June 1989, the Board of Regents remanded case No. 3 to DOH for further hearings, which were held in 1991. In July 1992, after this article 78 proceeding was begun, the Board found petitioner guilty of several charges and recommended that his license be revoked. The Commissioner of Health agreed, and forwarded the Board's report and his recommendation to the Board of Regents for a final determination. That determination has not yet been made.

In addition, a fourth investigation is being conducted by DOH, which has informed petitioner that further charges are contemplated against him (case No. 4).

To date, all the professional medical conduct proceedings involving petitioner have remained confidential. Tanner, however, has informed petitioner that DOH and the Board intend to make the Board's report and the Commissioner of Health's recommendation in case No. 3 available to the public, to hold open hearings in case No. 4, and to disclose the Board's posthearing report in case No. 4 to the public.

## III

■ Initially, we conclude that there is a justiciable controversy. Although no records have been disclosed in case No. 3, no charges have been filed in case No. 4, and no request has been made by a member of the public for disclosure of information, respondents have unequivocally asserted that they intend to follow specific policies of public access. If those policies are followed, the immediate practical effect on peti-

tioner would be the kind of publicity that would be devastating to his medical practice. In light of that clear probability, and the fact that the proceedings involving petitioner have thus far been confidential, the legal dispute between the parties is real, and their controversy is justiciable *(see generally, New York Pub. Interest Research Group v Carey,* 42 NY2d 527, 529-531).

### IV

We further conclude that the relief sought by petitioner is in the nature of mandamus. Mandamus is appropriate to compel a public body or officer to refrain from taking an action in contravention of a clear mandate of law, when the action to be enjoined entails no exercise of discretion *(see, Matter of New York Post Corp. v Leibowitz,* 2 NY2d 677; *see also, Matter of Hamptons Hosp. & Med. Ctr. v Moore,* 52 NY2d 88; Siegel, NY Prac § 558, at 872 [2d ed]).

### V

■ Public Health Law § 230 (9) provides: "Notwithstanding any other provisions of law, neither the proceedings nor the records of any such committee [on professional conduct] shall be subject to disclosure under article thirty-one of the civil practice law and rules except as hereinafter provided". The plain meaning of that statutory language mandates that physician disciplinary proceedings remain confidential until there has been a final determination of charges. The statute has been construed to require such confidentiality, a construction reinforcing the public policy of confidentiality in the context of professional disciplinary proceedings.

In *Matter of John P. v Whalen* (54 NY2d 89), the Court of Appeals addressed the confidentiality of administrative proceedings held pursuant to Public Health Law § 230. Although that case involved the phase of the proceedings preceding the filing of formal charges, which respondents concede are confidential *(see,* Public Health Law § 230 [10] [a]; [11]), the language of the Court was not so limited. "As is made clear by both the words 'except as hereinafter provided' in subdivision 9 of section 230 of the Public Health Law and by the established rules of construction, all parts of section 230 are to be read together and interpreted with reference to the scheme of the entire section [citations omitted]. So construed it is clear that the reference in CPLR article 31 (subd 9) was not a tacit

exception of Freedom of Information Law requests from the confidentiality provisions of section 230 of the Public Health Law; *that is, that section 230 is a State statute exempting information from disclosure within the meaning of section 87 (subd 2, par [a]) of the Public Officers Law" (Matter of John P. v Whalen, supra,* at 96-97 [emphasis added]).

More recently, the Court of Appeals held that dental disciplinary proceedings are confidential until there is a final determination *(Matter of Johnson Newspaper Corp. v Melino,* 77 NY2d 1). Although section 230 of the Public Health Law was not in issue, the Court determined that confidentiality was mandated pursuant to the policy embodied in Education Law § 6510 (8), which is essentially equivalent to Public Health Law § 230 (9). "[T]he applicable statute *(see,* Education Law § 6510 [8]) manifests a governmental policy preserving the confidentiality of information pertaining to disciplinary proceedings until a determination has been reached. The same policy of confidentiality is reflected in analogous statutes pertaining to disciplinary proceedings in the legal profession *(see,* Judiciary Law § 90 [10]), the medical profession *(see,* Public Health Law § 230 [10], [11] [a]; Education Law § 6510-a), and to disciplinary hearings conducted by the State Commission on Judicial Conduct *(see,* Judiciary Law § 44 [4])." *(Matter of Johnson Newspaper Corp. v Melino, supra,* at 9.)

The Court further concluded that the policy of confidentiality precluded open hearings. "[U]nder statutes prescribing disciplinary procedures in analogous contexts *[see,* Judiciary Law § 90 (10); Public Health Law § 230 (10) *(l);* (11) (a)], the existence of a requirement for confidential hearings has been assumed despite [an] * * * absence of any specific provision mandating closure" *(Matter of Johnson Newspaper Corp. v Melino, supra,* at 10).

The First Department has recently concluded that medical professional conduct proceedings are not confidential, regardless of the reasoning of *Matter of Johnson Newspaper Corp. (supra)* because that case "involved a different agency, the Education Department, operating under a different statute and a different policy and tradition from that of the Health Department with respect to the confidentiality of its disciplinary proceedings" *(Doe v Office of Professional Med. Conduct,* 188 AD2d 347; *see also, In re J.L. [McBarnette],* NYLJ, Feb. 20, 1992, at 23, col 3). We disagree. The confidentiality that has over so many years become embedded in proceedings of such seriousness is not so lightly eliminated. We are dealing with established

State policy, not an agency practice. The language of the Court of Appeals unambiguously reflects a broad State purpose and long tradition of confidentiality in professional misconduct proceedings *(see, People ex rel. Karlin v Culkin,* 248 NY 465, 478-479). Moreover, even after the 1991 amendment of Public Health Law § 230, when the ultimate responsibility for such proceedings no longer rested with the Department of Education *(see,* Public Health Law § 230 [10] [former (h)]), the proceedings themselves continue to remain essentially unchanged.

It is undisputed that the legislation recommended by DOH to allow open hearings was not included in the law that passed. The Legislature, when it amended section 230, not only rejected DOH's proposal, it preserved in exactly the same language the existing prohibition against disclosure of the proceedings and the records (Public Health Law § 230 [9]). That was a clear message that the policy requiring confidentiality was to be preserved. Section 230 (9) of the Public Health Law mandated confidentiality in medical disciplinary proceedings prior to its amendment *(see, Matter of Doe v Axelrod,* 123 AD2d 21, *revd on other grounds* 71 NY2d 484) and, by virtue of the same unchanged subdivision of the Public Health Law, continues to do so today.

## VI

No First Amendment right to public access has been raised by respondents, nor does one exist here. The right to public access to a professional disciplinary proceeding depends upon "whether the place and process have historically been open to the press and general public" and "whether public access plays a significant positive role in the functioning of the particular process in question" *(Press-Enterprise Co. v Superior Ct.,* 478 US 1, 8; *Matter of Johnson Newspaper Corp. v Melino,* 77 NY2d 1, 5-6, *supra).* Applying that test, there is no public right to access pursuant to Public Health Law § 230.

It has been the traditional policy of this State to maintain confidentiality in professional misconduct proceedings until final determination *(see, Matter of Johnson Newspaper Corp. v Melino, supra,* at 10-11). That policy of confidentiality serves the public purpose of removing any disincentive to the filing of professional misconduct complaints by protecting any private or confidential information that a complainant would not

want publicly disclosed *(see, Matter of Johnson Newspaper Corp. v Melino, supra,* at 10-11; *see also, Landmark Communications v Virginia,* 435 US 829, 835-836).

## VII

Respondents have not shown that any rational public purpose would be served by excepting the medical profession from the long-standing policy of confidentiality. Respondents argue otherwise, but have not demonstrated that the disclosure of mere charges, before it has been finally determined that the subject of the proceeding is guilty of the charges, serves a beneficial public purpose. The prejudice to an accused physician, subsequently exonerated of charges of professional misconduct, is manifest *(see, Matter of Johnson Newspaper Corp. v Melino,* 77 NY2d 1, 11, *supra).*

As then Chief Judge Cardozo observed in connection with a disciplinary hearing involving a lawyer: "Reputation in such a calling is a plant of tender growth, and its bloom, once lost, is not easily restored. The mere summons to appear at such a hearing and make report as to one's conduct, may become a slur and a reproach. Dangers are indeed here, but not without a remedy. The remedy is to make the inquisition a secret one in its preliminary stages * * * There is a practice of distant origin by which disciplinary proceedings, unless issuing in a judgment adverse to the attorney, are recorded as anonymous" *(People ex rel. Karlin v Culkin,* 248 NY 465, 478-479, *supra).*

The public is better served by the expeditious resolution of professional misconduct charges. In this regard, we note that respondents have failed to explain satisfactorily the lengthy delays and the repeated failure to determine the series of charges filed against petitioner. In any event, in the absence of a clear declaration by the Legislature of an intention to alter what has been the recognized and established practice, and in light of the categorical support given by the Court of Appeals toward maintaining confidentiality in professional disciplinary proceedings, it would be inappropriate for this Court to inaugurate such a seismic change.

## VIII

In light of the established precedent and the traditional policy in this State, we hold that Public Health Law § 230

mandates confidentiality in medical misconduct proceedings until they are finally determined.

Accordingly, the judgment of Supreme Court should be reversed, and the petition granted.

CALLAHAN, J. P., BALIO, DOERR and BOOMER, JJ., concur.

Judgment unanimously reversed, on the law, with costs, and petition granted.