■ COURTROOM TELEVISION NETWORK LLC, Appellant, v STATE OF NEW YORK et al., Respondents. [779 NYS2d 74]—

Order and judgment (one paper), Supreme Court, New York County (Shirley Werner Kornreich, J.), entered July 25, 2003, which denied plaintiff's motion for partial summary judgment to declare section 52 of the Civil Rights Law unconstitutional, granted summary judgment to the state defendants on their cross motion and to the county defendant upon search of the record, and upheld the constitutionality of the statute, on its face, unanimously affirmed, without costs.

There is no federal constitutional right to televise court proceedings (*Matter of Santiago v Bristol*, 273 AD2d 813, 814 [2000], *appeals dismissed* 95 NY2d 847 [2000], *lv denied* 95 NY2d 848 [2000]; *United States v Moussaoui*, 205 FRD 183, 186 [ED Va 2002]). Relying on *Richmond Newspapers, Inc. v Virginia* (448 US 555 [1980]), plaintiff suggests that the public has a First Amendment right to "observe" trials on television without physically attending those proceedings. However, *Richmond* merely held that "the right to *attend* criminal trials is implicit in the guarantees of the First Amendment" (at 580 [emphasis added]). In *Westmoreland v Columbia Broadcasting Sys., Inc.* (752 F2d 16, 23 [1984], *cert denied sub nom. Cable News Network, Inc. v United States Dist. Ct. for S. Dist. of N.Y.*, 472 US 1017 [1985]), the Second Circuit noted that *Richmond* and its progeny "articulate a right to attend trials, not a right to view them on a television screen."

It is true that "[o]penness . . . enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system" (*Press-Enterprise Co. v Superior Ct. of Cal., Riverside County*, 464 US 501, 508 [1984]). But the value of openness lies not in how many people actually attend (or watch a broadcast of) a trial, but "in the fact that people not actually attending trials can have confidence that standards of fairness are being observed; the sure knowledge that anyone is free to attend gives assurance that established procedures are being followed and that deviations will become known" (*id.*).

Assuming that section 52's prohibition of televised trials restricts "speech" within the meaning of the First Amendment—i.e., restricts the dissemination of conduct undertaken with an "intent to convey a particularized message" where "the likelihood was great that the message would be understood by those who viewed it" (*Spence v Washington*, 418 US 405, 410-

411 [1974])—it survives the judicial scrutiny that applies to content-neutral statutes. Under the Free Speech Clause, a content-neutral statute that burdens speech must further "an important or substantial governmental interest" that is "unrelated to the suppression of free expression," and the statute's "incidental restriction" on expression must be "no greater than is essential to the furtherance of that interest" (*Turner Broadcasting Sys., Inc. v Federal Communications Commn.*, 512 US 622, 662 [1994]). Section 52 is sufficiently tailored to further an important state interest, namely, the preservation of the value and integrity of live witness testimony in state tribunals. As the IAS court concluded, "[t]he record contains evidence upon which the New York Legislature could reasonably conclude that its legitimate interest in fair trials outweighs the benefits of permitting camera coverage, even on a discretionary basis."

Plaintiff suggests that less restrictive measures, such as existed under former section 218 of the Judiciary Law, may satisfy requirements of narrow tailoring. However, content-neutral statutes are not invalid simply because the government's interest "could be adequately served by some less-speech-restrictive alternative" (*Ward v Rock Against Racism*, 491 US 781, 800 [1989]). Section 52 does not "unwarrantedly abridge . . . the opportunities for the communication of thought" in public places (*Cox v New Hampshire*, 312 US 569, 574 [1941]) because reporters are "free to attend the entire trial, and to report whatever they observe" (*United States v Hastings*, 695 F2d 1278, 1282 [11th Cir 1983], *cert denied sub nom. Post-Newsweek Stas., Fla., Inc. v United States*, 461 US 931 [1983]).

We reject the contention that a right to televise court proceedings exists under NY Constitution, article I, § 8. There is no precedent in New York recognizing such a right (*Matter of Santiago v Bristol, supra*). Although the Court of Appeals has occasionally found our State Constitution more protective of expressional freedoms than the Federal Constitution, there is no such precedent with respect to access to proceedings (*Matter of Johnson Newspaper Corp. v Melino*, 77 NY2d 1, 8 [1990]), and that Court has never interpreted article I, § 8 as granting any greater access rights than those provided under *Richmond Newspapers, Inc. v Virginia (supra)* and its progeny. We also appreciate that this is a matter that can be reviewed by the State Legislature should it decide to do so. Concur—Nardelli, J.P., Mazzarelli, Andrias, Gonzalez and Sweeny, JJ. [*See* 1 Misc 3d 328.]