Matter of Newsday LLC v New York State Educ. Dept. (2025 NY Slip Op 06775)

Matter of Newsday LLC v New York State Educ. Dept.

2025 NY Slip Op 06775

Decided on December 4, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 4, 2025

CV-24-1945
[*1]In the Matter of Newsday LLC, Respondent-Appellant,
v
New York State Education Department, Appellant-Respondent

Calendar Date:October 9, 2025

Before:Garry, P.J., Clark, Aarons, Lynch and Powers, JJ.

Letitia James, Attorney General, Albany (Beezly J. Kiernan of counsel), for appellant-respondent.
Ballard Spahr LLP, New York City (Anna Kaul of counsel), for respondent-appellant.

Garry, P.J.
Cross-appeals from a judgment of the Supreme Court (Roger McDonough, J.), entered October 11, 2024 in Albany County, which (1) granted petitioner's application, in a proceeding pursuant to CPLR article 78, to annul a determination of respondent partially denying petitioner's Freedom of Information Law request, and (2) denying petitioner's request for counsel fees.
Petitioner submitted a Freedom of Information Law (see Public Officers Law art 6 [hereinafter FOIL]) request to respondent seeking all license registration renewal applications submitted to respondent's Office of the Professions by certain named physicians during specified years. In pertinent part, that biennial application requires licensees to answer five yes-or-no "moral character" questions generally concerning any professional misconduct determinations, pending professional misconduct charges, limitations on hospital admitting privileges, criminal convictions and pending criminal charges.[FN1] Respondent provided petitioner with the requested documents but redacted all answers to the moral character questions, among other responses, reasoning that such information would constitute an unwarranted invasion of personal privacy and thus was exempt from disclosure pursuant to Public Officers Law § 87 (2) (b). Respondent's rationale was upheld upon administrative appeal, and petitioner's request for reconsideration was denied. Petitioner commenced this CPLR article 78 proceeding seeking to annul respondent's determination, except with respect to the redactions concerning pending misconduct charges. In opposition, respondent maintained its reliance on Public Officers Law § 87 (2) (b) but also urged that Education Law § 6510 (8) specifically exempted the withheld information from disclosure (see Public Officers Law § 87 [2] [a]). Supreme Court granted the petition, rejecting both of respondent's bases for resisting disclosure but declining to award petitioner counsel fees and other litigation costs. The parties cross-appeal.
"Under FOIL, all records are presumptively available for public inspection and copying, unless the agency satisfies its burden of demonstrating that the material requested falls squarely within the ambit of one of the statutory exemptions, which must be narrowly interpreted" (Matter of New York Civ. Liberties Union v City of Rochester, 43 NY3d 543, 548 [2025] [internal quotation marks, brackets and citations omitted]; see Public Officers Law § 84). Here, respondent principally relies upon the exemption that allows denial of access to records that are "specifically exempted from disclosure" by statute (Public Officers Law § 87 [2] [a]), invoking Education Law § 6510 (8).[FN2] In relevant part, Education Law § 6510 (8) mandates that "[t]he files of [respondent] relating to the investigation of possible instances of professional misconduct, or the unlawful practice of any profession licensed by the board of regents, or the unlawful use of a professional title or the moral fitness [*2]of an applicant for a professional license or permit, shall be confidential."
Before issuing any license to an applicant for admission to the practice of a profession in this state, respondent must determine that an applicant meets the requirements prescribed by the particular profession (see Education Law § 6501 [1]). For physicians, those requirements include "good moral character as determined by [respondent]" (Education Law § 6524 [7]). It is evident from the self-titled moral character questions on the subject application that respondent views professional misconduct as bearing upon a physician's moral character, and such misconduct includes having been convicted of certain crimes and having been found guilty of certain professional misconduct or subjected to certain disciplinary action in other jurisdictions (see Education Law § 6509 [5] [a], [b], [d]). This interpretation aligns with respondent's obligation to "request and review any information relating to an applicant which reasonably appears to relate to professional misconduct in his or her professional practice in this and any other jurisdiction" prior to issuing any license (Education Law § 6502 [3-a]). For physicians, respondent must take the additional step of advising the Department of Health's Office of Professional Medical Conduct "of any information about an applicant which reasonably appears to be professional misconduct" (Education Law § 6502 [3-a]; see Education Law § 6530 [9] [a], [b], [d]).
We agree with respondent that the foregoing evaluative inquiry that it is legislatively tasked with undertaking constitutes an investigation of moral fitness within the meaning of Education Law § 6510 (8). As illustrated by respondent's submissions, respondent requires licensees, including physicians, to provide information relevant to their moral fitness every two years — via the subject application — to fulfill its licensing duties. This process necessarily entails inquiry into potential misconduct and other circumstances bearing on moral character.[FN3] Although it is generally the Department of Health that handles complaints and reports of medical misconduct (see Public Health Law § 230 [10] [a]; L 1975, ch 109), the existence of that complementary scheme does not mean that respondent's regulatory role as to the medical profession otherwise ceases, or that its inquiry into misconduct for the purpose of determining the moral fitness of physicians loses the protection of Education Law § 6510 (8) (compare Education Law § 6510 [6]). It must also be emphasized that the moral character licensing questions broadly ask for information concerning criminal convictions, findings of professional misconduct and disciplinary action, but not all convictions, misconduct or discipline will ultimately constitute professional misconduct (see Education Law § 6509 [5] [a], [b], [d]). We agree with respondent that shielding the answers to these questions therefore encourages candor from licensees and protects [*3]them from unwarranted public exposure based upon preliminary information (see generally Matter of Johnson Newspaper Corp. v Melino, 77 NY2d 1, 10-11 [1990]).[FN4] In view of the plain language of Education Law § 6510 (8), we find that respondent satisfied its burden to demonstrate that the withheld material is specifically exempted from disclosure by statute and thus may be withheld pursuant to Public Officers Law § 87 (2) (a).
Given our conclusion, petitioner cannot be said to have substantially prevailed in this proceeding (see Public Officers Law § 89 [4] [c] [ii]), and there is therefore no basis for overturning Supreme Court's election not to award petitioner fees and costs.
Clark, Aarons, Lynch and Powers, JJ., concur.
ORDERED that the judgment is modified, on the law, without costs, by reversing so much thereof as partially granted the petition; petition dismissed in its entirety; and, as so modified, affirmed.

Footnotes

Footnote 1: More fully, the subject questions inquire whether, since the applicant's last registration application, "any licensing or disciplinary authority revoked, annulled, cancelled, accepted surrender of, suspended, placed on probation, or refused to issue or renew a professional license or certificate held by [the applicant] now or previously, or fined, censured, reprimanded or otherwise disciplined [them]"; there "are criminal charges pending against [the applicant] in any court"; the applicant has "been found guilty after trial, or pleaded guilty, no contest, or nolo contendere to a crime (felony or misdemeanor) in any court"; there "are charges pending against [the applicant] in any jurisdiction for any sort of professional misconduct"; and "any hospital or licensed facility restricted or terminated [the applicant's] professional training, employment, or privileges" or they have "voluntarily or involuntarily resigned or withdrawn from such association to avoid the imposition of such action due to professional misconduct, unprofessional conduct, incompetency, or negligence."

Footnote 2: Where, as here, the confidentiality rights of third parties are implicated by a FOIL disclosure determination, Supreme Court was permitted to consider an exemption asserted for the first time in response to the petition (see Matter of Hutchinson v Annucci, 189 AD3d 1850, 1855 [3d Dept 2020]; Matter of Rose v Albany County Dist. Attorney's Off., 111 AD3d 1123, 1124-1125 [3d Dept 2013]).

Footnote 3: We note that the Committee on Open Government agreed (see Comm on Open Govt FOIL-AO-19880 [2023]).

Footnote 4: Petitioner's argument that this interpretation creates a conflict with Public Health Law § 2995-a is unpersuasive, as FOIL itself provides that a denial of access to records thereunder does not limit or abridge the right to access to such records pursuant to another law (see Public Officers Law § 89 [6]).