[764 NYS2d 247]

ANONYMOUS, Appellant, v BUREAU OF PROFESSIONAL MEDICAL
CONDUCT et al., Respondents.

First Department, September 11, 2003

## APPEARANCES OF COUNSEL

*Charles A. Singer* for appellant.

*James M. Hershler* of counsel (*Marion R. Buchbinder* on the brief; *Eliot Spitzer, Attorney General,* attorney), for respondents.

## OPINION OF THE COURT

MARLOW, J.

The issue on this appeal is whether physicians, who have a long-standing right to confidentiality during a medical disciplinary proceeding—in order to assure, inter alia, that unfounded accusations do not jeopardize their reputation—lose the right to that confidentiality after the proceeding concludes with a determination favorable to them.

Petitioner is a general practitioner licensed to practice medicine in the State of New York, with an office in Manhattan. Respondents State Bureau of Professional Medical Conduct and State Board for Professional Medical Conduct are each part of respondent New York State Department of Health (DOH). Pursuant to New York Public Health Law, article 2, title II-A, § 230 *et seq.* (Professional Medical Misconduct), respondents are the statutorily authorized New York State professional disciplinary agencies with jurisdiction to address allegations of physician misconduct.

In October 1999, respondent State Board for Professional Medical Conduct (hereinafter respondent Board) issued a statement of charges against petitioner stemming from a "social encounter [with a female] not involving the practice of medicine." Petitioner was alleged, inter alia, to have treated her for a minor condition using a procedure for which he was not certified under state regulations and failed to maintain a medical record for a single prescription on a later occasion. Consequently, respondent Board charged petitioner with a serious form of misconduct in addition to failure to maintain one medical record and practicing medicine beyond its authorized scope.

Respondent Board held a hearing before a three-member Hearing Committee (hereinafter Committee) and an Administrative Law Judge in five sessions between December 1999 and February 2000. The Committee found the complainant's testimony "saturated with inconsistencies and exaggerations." In addition there were a "number of circumstances testified to by [complainant] that defied logic." Although the Committee found that petitioner had changed his story "in an apparent attempt to make himself look better," it nevertheless believed his consistent assertion that "the office encounter was of a social nature and that he did not offer [the female] medical care and that she did not request medical care."

In its determination and order, the Committee concluded that respondent Department of Health failed to sustain all but one charge. Specifically, the Committee found that the Department of Health had failed to prove that petitioner committed any serious forms of misconduct whatsoever and, further, that respondent Department of Health failed to prove that petitioner practiced medicine beyond the scope permitted by law. However, the Committee did find that complainant asked petitioner to give her a prescription for a minor problem which he filled with an appropriate medication. Since issuing a prescription connotes medical treatment, the Committee concluded that "a medical record should [have been] maintained."

In deciding an appropriate penalty, the Committee was mindful that the only allegation sustained against petitioner was the failure to maintain a proper medical record for one prescription for one patient. The Committee also recognized that issuing a prescription to social acquaintances or as a personal favor "is a practice which occurs probably too frequently, but is nevertheless a technical violation of proper standards of practice." Further, the Committee was aware that the failure to keep a medical record in this particular instance "did not involve a matter of quality of the medical record or quality of care, but was a one time technical violation."

Consequently, the Committee believed an administrative warning was an appropriate penalty under these circumstances. However, the Administrative Law Judge advised the Committee that an administrative warning was not a statutorily authorized outcome. The Committee was thus constrained to impose a reprimand as the penalty for the single sustained charge of professional misconduct based on the failure to maintain a medical record (see Public Health Law § 230 [10] [m] [i]; § 230-a; Education Law § 6530 [32]).

Thereafter, respondent State Bureau of Professional Medical Conduct (hereinafter respondent Bureau), in accordance with its policy to publish on its official Web site all disciplinary orders rendered against physicians once they are final (that is, after the administrative appeal process has been exhausted), published on its Web site the full text of both the statement of charges and the determination and order. This publication fully recited the underlying factual allegations and specifications of charges, even those not sustained against petitioner.

Petitioner requested respondent Bureau to remove all references to the determination and order and the related notice of hearing and statement of charges.[1] Specifically, petitioner noted that the "posting of allegations of [serious misconduct] * * * which were never proven is extremely damaging to his professional and personal reputation [and] these odious and unproven allegations should not be a matter of public record." Respondent Bureau refused to grant petitioner's request on the ground that "[a]ll disciplinary orders are public upon final disposition."

Petitioner then instituted this proceeding pursuant to CPLR article 78 to compel respondent Bureau to withdraw the statement of charges and determination and order from publication on its Web site and keep confidential its records concerning the accusations which were not sustained. Petitioner argued that respondent's failure to keep these records confidential violates Public Health Law § 230 (10) (g), and that their refusal to withdraw the information from public access is arbitrary and capricious. Alternatively, petitioner challenged the constitutionality of Public Health Law § 230 as applied to him on equal protection grounds.[2]

Respondents maintained that the Public Health Law requires that the Board keep disciplinary proceedings confidential only until, and regardless of, their final outcome.[3] Respondents also claimed they were required to disseminate this information pursuant to the Patient Health Information and Quality

---

1. On appeal, petitioner limits his request to the removal of all references to the charges which were not sustained.

2. Petitioner has abandoned on appeal his claim for attorneys' fees.

3. However, once a physician's license is annulled, suspended without stay or revoked, regardless of whether the physician was appealing the determination, the Committee is required by Public Health Law § 230 (10) (g), as amended in 1996, to make public its findings, conclusions, determinations and order. Respondents asserted that the intent of the amendment was to expand the public's access to disciplinary orders by making certain orders available notwithstanding that they were not final due only to a pending appeal.

Improvement Act of 2000 (Public Health Law art 29-D [eff Oct. 6, 2000]).

The Supreme Court denied the petition and dismissed the proceeding, finding that there was nothing in the enactment of Public Health Law § 230 (10) (g) "indicative of a policy to withdraw from public access disciplinary charges and determinations critical to the public's making of informed decisions in their choice of physicians." (194 Misc 2d 433, 437 [2002].) In addition, the court found "[no] indication that the Legislature intended to define for DOH, in its implementation of the statute, the content and scope of the information to be included in the physicians' profile." (Id.) Consequently, the court concluded that the construction respondents gave the statute is reasonable and entitled to great weight. Further, the court determined that respondents' interpretation of the statute was consistent with a general "governmental policy of preserving the confidentiality of information pertaining to disciplinary proceedings *until* a determination has been reached." (Id.)

On appeal, petitioner maintains that the public policy of this State and the express terms of Public Health Law § 230 require that respondent Department of Health keep confidential, after final determination, the existence and terms of dismissed and rejected charges and factual accusations. We agree and reverse.

We acknowledge that "the practical construction of the statute by the agency charged with implementing it, if not unreasonable, is entitled to deference by the courts" (*Matter of Louis Harris & Assoc. v deLeon*, 84 NY2d 698, 706 [1994]) "depending upon the extent to which the interpretation relies upon the special competence the agency is presumed to have developed in its administration of the statute" (*Matter of Rosen v Public Empl. Relations Bd.*, 72 NY2d 42, 47 [1988]). However, "where, as here, the question is one of pure statutory construction dependent only on accurate apprehension of legislative intent [with] little basis to rely on any special competence, judicial review is less restricted as statutory construction is the function of the courts" (*id.* at 47-48 [citations and internal quotation marks omitted]; *see also Matter of Webster Cent. School Dist. v Public Empl. Relations Bd.*, 75 NY2d 619, 626 [1990]). In any event, respondents' construction of the law as requiring public dissemination of dismissed disciplinary proceedings involving licensed professionals flies in the face of this State's general underlying policy that these disciplinary proceedings remain confidential until concluded. Moreover, we find that dissemination of unsustained charges after a confidential hearing advances no legitimate state interest.

New York's statutes and court decisions reflect a policy of keeping disciplinary proceedings involving licensed professionals confidential until they are finally determined (*see Doe v Office of Professional Med. Conduct*, 81 NY2d 1050 [1993]; *Matter of Johnson Newspaper Corp. v Melino*, 77 NY2d 1, 10 [1990]). This policy, while ensuring the privacy of a potential complainant who might otherwise not file a complaint of professional misconduct, "also evinces a sensitivity to the possibility of irreparable harm to a professional's reputation resulting from unfounded accusations—a possibility which is enhanced by the more relaxed nature of the procedures and evidentiary rules followed in disciplinary proceedings" (*Johnson* at 11).

Thus, we start with the premise of confidentiality.[4] Respondents contend that although the ongoing proceeding must be kept confidential, once charges against a doctor are determined to be totally unfounded the doctor is afforded absolutely no protection, and these unfounded charges can be displayed worldwide on the Internet. Respondents' determination, accepted by the nisi prius court, is utterly devoid of logic, and therefore, we deem it arbitrary, capricious and a total abuse of discretion.

The statute, contrary to respondents' contention and the Supreme Court's holding, does not require that confidentiality be thrown out the window once a doctor receives a favorable determination by the Board. There is nothing in Public Health Law § 230 (10) (g) which requires that charges which are not sustained be disseminated to the public. Rather, this statute, relied on by both sides to support their respective contentions, by its plain language, does not require respondents to make public this information (*see* McKinney's Cons Laws of NY, Book

---

4. Other statutes which support this policy of confidentiality are: Public Health Law § 230 (10) (a) (v) (files of the Office of Professional Medical Conduct relating to the investigation of possible instances of professional misconduct shall be confidential and not subject to disclosure at the request of any person, except as provided by law in a pending disciplinary action or proceeding); State Administrative Procedure Act § 307 (3) (b) (agency may delete from its index, decision, determination or order any information that, if disclosed, would constitute an unwarranted invasion of personal privacy under Public Officers Law § 89 [2]); Public Officers Law § 87 (2) (b) (agency may deny access to records or portions thereof which if disclosed would constitute an unwarranted invasion of personal privacy under the provisions of section 89 [2]); 10 NYCRR 50-1.6 (all records of the Department of Health are available for public inspection except that access may be denied to those records or portions thereof that are specifically exempted from disclosure by state or federal statute or if disclosed would constitute an unwarranted invasion of personal privacy).

1, Statutes § 76 [statutes too clear for construction]; § 94 [intent determined from natural and obvious meaning]). The statute states, in relevant part, that "[t]he committee's findings, conclusions, determinations and order shall become public upon issuance in any case in which annulment, suspension without stay or revocation of the licensee's license is ordered."

Here, petitioner received a reprimand. Thus, this statute is not applicable to petitioner. Respondents point to no other section of the Public Health Law which requires that after the Committee has determined that the Department of Health has not sustained charges against a doctor, these charges must be disseminated to the public.[5]

Respondents also argue that petitioner "utterly fails to explain why any reasonable person would credit dismissed allegations when reading a Determination and Order that clearly states which allegations were sustained and which were dismissed." Indeed, it takes no special expertise on the subject of "human nature" to appreciate that many people will have continued doubts about whether petitioner actually committed these allegedly serious improprieties with which he was charged, and somehow avoided accountability, i.e., "got off on a technicality." It is virtually certain that doubts like these will arise and that they will negatively and unjustifiably impact potential patients' decisions to choose petitioner as their physician.

Moreover, it makes no sense to summarily cast aside confidentiality concerns simply because a final determination contains both sustained and unsustained charges. In this case, that is especially so since the only sustained charge, had it been the sole charge, would have resulted in an *administrative warning*, which itself, by law, is entitled to a cloak of confidentiality and does "not constitute an adjudication of guilt" nor may it "be used as evidence that the licensee is guilty of the alleged misconduct" (Public Health Law § 230 [10] [m] [ii]).

Respondents offer no legitimate explanation why redaction is not an appropriate remedy under these circumstances. Specifically, respondents complain that:

---

**5.** Although petitioner does not take issue with respondents' publication of the statement of charges and determination and order relating to the sustained charge, there does not appear to be any specific statutory authority which requires public dissemination of the Committee's findings of fact, conclusions of law and determination and order after a penalty of reprimand is imposed. However, dissemination of such information is not contrary to the public policy of advising potential patients of adverse determinations against doctors.

"It is difficult to imagine that determinations could be coherently fashioned or edited to omit discussions of charges that are dismissed. Notably, petitioner has failed to suggest how the respondents could practicably go about identifying and excising all references to dismissed charges or matters petitioner considers 'personal' in nature, when much of the Determination and Order in this case resolves issues going to the entire record such as credibility of the witnesses and determination of the appropriate penalty."

Here, however, the sustained charge and the other charges not sustained are easily severable, as the factual predicate for the sustained charge is unconnected to the alleged factual predicate for the dismissed charges. In any event, absent any authority to support respondents' irrational policy of disseminating information about dismissed, i.e., presumably false, charges, redaction is respondents' only appropriate choice. Moreover, regardless of respondents' legal obligation to keep dismissed charges confidential, it is also the only decent and fair way to treat factually discredited accusations. Therefore, this Court categorically rejects respondents' claim that redaction is difficult to achieve.

In addition to finding that respondents' interpretation of the statute is not arbitrary and capricious, the Supreme Court also found that respondents were required to maintain physician profiles and that the charge (even though not sustained) was "critical" to the public's ability to make an informed decision in selecting a doctor. However, we find nothing in the Patient Health Information and Quality Improvement Act of 2000 which requires public dissemination of charges, or information relating to those charges, which, particularly on their merits, are not sustained. Public Health Law § 2995-a (1) (b) requires the Department of Health to create and publicly disseminate physician profiles which include disciplinary actions taken against physicians under section 230, "other than an action that remains confidential." Only two types of actions by DOH must be kept confidential: (1) administrative warnings issued upon a finding that the physician committed either "professional misconduct of a minor or technical nature or of substandard medical practice which does not constitute professional misconduct" (Public Health Law § 230 [10] [m] [ii]); and (2) orders directing that the physician's medical practice be monitored (Public Health Law § 230 [17] [c]).

Respondents do not dispute that the Legislature intended to protect (1) those physicians who receive an administrative warning after a charge of professional misconduct was sustained, and (2) those physicians whose practice was directed to be monitored because there existed reasonable cause to believe that these doctors were unable to practice medicine with reasonable skill and safety to patients. However, respondents simultaneously contend that the Legislature did not intend to protect physicians who are accused of misconduct but are, after a full hearing, completely exonerated. Respondents' contention and their reading of the Public Health Law defy all common sense and logic. Indeed, we agree with petitioner's counsel who at oral argument aptly observed that there would be no point in affording accused medical professionals, inter alia, full evidentiary hearings on professional misconduct charges, the fundamental right of cross-examination, the right to testify and call witnesses on their behalf, and the right to be represented by counsel of their choosing, if, after all of that, a dismissed charge were *required* to be made public.

Moreover, contrary to the court's finding that under Public Health Law § 2995-a the Department of Health has "discretionary authority to publish and disseminate information concerning physicians licensed to practice within the state" (194 Misc 2d at 437), this discretion is not without statutory limitation. The statute itself prohibits the Department of Health from publishing criminal "not guilty" verdicts and professional disciplinary matters which are otherwise required to be kept confidential. The statute also prohibits the Department of Health from publishing pending malpractice actions, and dismissed malpractice actions, and malpractice settlements if two or less in number, unless the Commissioner determines that the settlement is relevant to patient decisionmaking concerning health care quality.

Thus, under the terms of this statute, if a doctor receives a favorable determination in either a criminal action or a civil action, the information is not available for public review. We therefore find that it is unquestionably in accord with the purpose and tenor of the statute to similarly insulate from public access any information involving a favorable determination in a medical disciplinary proceeding.

We need not reach petitioner's alternate contention in light of our determination.

Accordingly, the judgment of the Supreme Court, New York County (Kibbie Payne, J.), entered November 18, 2002, which

denied petitioner physician's application pursuant to CPLR article 78 to annul the determination of respondent State Board for Professional Medical Conduct to publish, on respondent Bureau of Professional Medical Conduct's Web site, the determination and order issued in connection with a disciplinary proceeding against petitioner, should be reversed, on the law, with costs, the petition granted and respondents directed to withdraw from public access those portions of the statement of charges, determination and order, and any other records which relate in any way to the charges which were not sustained against petitioner.

WILLIAMS, J. (concurring). I agree with the majority in this particular matter, that "dissemination of unsustained charges after a confidential hearing advances no legitimate state interest," that respondent probably improvidently exercised its discretion here, and that the statutory policy of confidentiality is intended to protect both complainant and accused professional in a professional disciplinary hearing (*Matter of Johnson Newspaper Corp. v Melino*, 77 NY2d 1, 11 [1990]; *Doe v Office of Professional Med. Conduct*, 81 NY2d 1050, 1052 [1993]). However, I would be remiss if I failed to note that the confidentiality that we are asserting here is inferred from the statute rather than express, in a statutory setting where the Legislature clearly intends broad public dissemination of physician information, including misconduct. Such circumstances bring to mind the *Doe* court's statement (at 1053) that: "[i]n our view, however, the Legislature is in the best position to weigh conflicting policy values represented by these two approaches [confidentiality and public disclosure] as they affect the various professions and enact consistent provisions for them giving appropriate protection to the interests of the parties and witnesses and the public interest."

TOM, J.P., SAXE and LERNER, JJ., concur with MARLOW, J.; WILLIAMS, J., concurs in a separate opinion.

Judgment, Supreme Court, New York County, entered November 18, 2002, reversed, on the law, with costs, the petition granted and respondents directed to withdraw from public access those portions of the statement of charges, determination and order, and any other records which relate in any way to the charges which were not sustained against petitioner.