OPINION OF THE COURT
 

 R.S. Smith, J.
 

 In
 
 Doe v Office of Professional Med. Conduct
 
 (81 NY2d 1050, 1052 [1993]) we interpreted Public Health Law § 230 (9) to require that disciplinary proceedings brought against physicians “remain confidential until finally determined.” We decide today that, where the proceedings are determined in the physician’s favor, the requirement of confidentiality continues to exist after the determination. We also decide that in this case, where a physician was exonerated of all the charges against him except one minor one not closely related to the others, the Department of Health abused its discretion by releasing to the public all of the charges and their disposition.
 

 Facts
 

 Petitioner-respondent (petitioner) is a doctor practicing in Manhattan. On October 28, 1999, the State Board for Profes
 
 *666
 
 sional Medical Conduct, the Department’s professional disciplinary agency, brought charges against him for “willfully harassing, abusing a patient physically,” “failure to maintain records,” “moral unfitness,” “fraudulent practice” and “practicing beyond the scope.” The charges were based on the complaint of a woman who said she had been petitioner’s patient.
 

 The Board, relying on the assertions of the complaining witness, alleged that petitioner had treated her “late one evening” at his office for a “sinus infection and a headache . . . with massage and acupuncture.” During the treatment, according to the allegations, petitioner induced her to remove clothing, massaged her intimately and kissed her. It was also alleged that he engaged in the practice of acupuncture without an appropriate certificate or license, and that he failed to maintain a medical record accurately reflecting the treatment, condition and/or diagnosis of the complaining witness.
 

 A hearing was held before a committee on professional conduct, as provided by Public Health Law § 230 (10) (e) and (f). After the hearing, the Committee issued a “Determination and Order” on April 28, 2000, rejecting all of the charges except for one instance of failure to maintain a medical record. The Committee found that, while there was an “office encounter” between the complaining witness and petitioner, the encounter “was of a social nature.” It found that the complaining witness did not go to petitioner’s office for medical reasons, and that while they were there he did not offer medical care and she did not request it. The Committee noted that petitioner was “foolish” in choosing his office as the location of this social interaction, but found that no professional misconduct in connection with the office encounter had been proved.
 

 The Committee also found that, a week or more after the office meeting, the complaining witness asked petitioner to give her a prescription for sinus problems; that he phoned in a prescription of Cipro for her; and that he failed to maintain a record of having done so. The Committee stated that it had “discussed giving [petitioner] an administrative warning” for this “technical violation,” but had been advised that a mere warning could not be issued after a hearing, and therefore decided that the appropriate penalty was a reprimand. Petitioner did not seek review of this determination.
 

 It is the position of the Department, as expressed in this litigation, that all final determinations in physician disciplinary
 
 *667
 
 proceedings, whether favorable or unfavorable to the physician accused, may be made available to the public. It is the Department’s policy, however, to post a record of the charges made and their determination on its Web site only in cases where some disciplinary order against a physician has been issued. If any discipline is imposed, the Department posts all of the charges and determinations, without redaction. Accordingly, after petitioner’s time to seek review of the Committee’s determination had expired, the charges against him and the Committee’s resolution of them became available on the Internet. Petitioner apparently did not discover this for some considerable time.
 

 On February 14, 2002, petitioner’s attorney requested by letter that the Department withdraw all references to the proceedings from its Internet site, and maintain “all records pertaining to this matter ... in absolute confidence.” The request was rejected, and petitioner brought the present proceeding pursuant to CPLR article 78, asking that the Board and the Department be compelled to withdraw the materials in question from public access and to keep them confidential. Supreme Court dismissed the petition. The Appellate Division reversed and granted the petition, directing the Board and the Department to “withdraw from public access those portions of the statement of charges, determination and order, and any other records which relate in any way to the charges which were not sustained” (309 AD2d 44, 53 [2003]). The Appellate Division granted leave to appeal, and we now affirm the Appellate Division’s order.
 

 Discussion
 

 Our decision in
 
 Doe
 
 is the starting point for our analysis.
 
 Doe
 
 was brought by a physician while disciplinary proceedings were pending against him. He asked that the proceedings be closed, and we held he was entitled to that relief. Our decision was based on Public Health Law § 230 (9), which provides:
 

 “Notwithstanding any other provisions of law, neither the proceedings nor the records of any such committee [i.e., a committee on professional conduct] shall be subject to disclosure under article thirty-one of the civil practice law and rules except as hereinafter provided. No person in attendance at a meeting of any such committee shall be required to testify as to what transpired thereat. The prohibition relating to discovery of testimony shall not
 
 *668
 
 apply to the statements made by any person in attendance at such a meeting who is a party to an action or proceeding the subject matter of which was reviewed at such meeting.”
 

 Although this section on its face prohibits only disclosure under the CPLR’s discovery provisions, we said in
 
 Doe,
 
 relying on our prior decision in
 
 Matter of John P. v Whalen
 
 (54 NY2d 89 [1981]), that section 230 (9) “when read in conjunction with the statute as a whole . . . mandates] confidentiality in physician disciplinary proceedings”
 
 (Doe,
 
 81 NY2d at 1052). There would be little point in section 230 (9)’s prohibition on civil discovery if the materials protected by that statute were publicly available.
 

 The issue in this case arises from our statement in
 
 Doe
 
 that “[o]ur construction of the statute is consistent with the general policy that disciplinary proceedings involving licensed professionals remain confidential
 
 until finally
 
 determined”
 
 (id.
 
 [emphasis added]). The Department interprets this language to mean that, after final determination, the confidentiality restriction ceases to exist, whether the physician is found guilty or innocent of the charges. The Department does not affirmatively publicize determinations unless they are, at least in part, adverse to the physician, but that in the Department’s view is a matter of its own choice, not a legal requirement. Petitioner, however, argues that the quoted language from
 
 Doe
 
 means only that proceedings can become public after a final determination adverse to the physician, and that proceedings in which the physician is exonerated must remain confidential. We agree with petitioner.
 

 The “general policy” we relied on in
 
 Doe
 
 relating to “disciplinary proceedings involving licensed professionals” was intended, in significant part, to protect professionals against the disastrous effect that public knowledge of unfounded charges can have on a professional career. “Reputation in such a calling is a plant of tender growth, and its bloom, once lost, is not easily restored”
 
 (People ex rel. Karlin v Culkin,
 
 248 NY 465, 478 [1928] [Cardozo, Ch. J.] [referring to the legal profession]). The Department argues that dissemination of unfounded charges after they have been resolved will not injure a doctor’s reputation, because the public, in learning of the charges, will also learn that they have been dismissed. We conclude, as did the Appellate Division, that this is unrealistic. Many people who learn that a doctor has been charged with misconduct will think it possible that
 
 *669
 
 there was something to the charges, even if they were not upheld. Belief in that possibility will often be enough to make a prospective patient seek out another doctor. No one, but especially not a professional whose livelihood depends on being thought trustworthy, would want it generally known that he was accused by a state agency (though found not guilty) of harassment, abuse, “moral unfitness” for his profession and fraud.
 

 It is true, as we noted in
 
 Doe,
 
 that a professional’s interest in the confidentiality of charges brought against him is not the only relevant policy consideration. There is a strong public interest in the enforcement of the rules against professional misconduct, and it can be argued that the public should have a right to know all the details of enforcement proceedings so that it can evaluate, among other things, the vigor and efficiency with which allegations of misconduct are being pursued. As we said in
 
 Doe,
 
 however, the choice between “conflicting policy values” is best made by the Legislature
 
 (Doe,
 
 81 NY2d at 1053). We decided in
 
 Doe
 
 that the applicable legislation, Public Health Law § 230 (9), required that pending disciplinary proceedings not be open to the public, and we now hold that it also requires confidentiality of terminated proceedings that have been resolved in the physician’s favor.
 

 The language of section 230 (9) gives no support to the idea that the confidentiality provided for in that section is limited to pending proceedings. On the contrary, the words “neither the proceedings
 
 nor the records
 
 . . . shall be subject to disclosure” (emphasis added) imply that pending and terminated proceedings should be treated alike. We do not read this to mean that all terminated proceedings, even those in which there have been findings of misconduct, must remain confidential, but the statute clearly does not support the Department’s view that the termination of proceedings by itself is enough to make the statute’s protections disappear.
 

 Other subdivisions of Public Health Law § 230 govern the confidentiality or public availability of materials relating to specific physician disciplinary proceedings. These subdivisions, while they do not directly answer the question presented here, help to give an overall picture of the statutory framework. Two subdivisions provide that certain actions adverse to the physician, short of formal discipline, shall remain confidential: section 230 (10) (m) (ii) provides that “ [a]dministrative warnings and consultations shall be confidential” and section 230 (17) (a)
 
 *670
 
 and (c) provide that an order for “monitoring” of a physician (entered when “there is reason to believe that the licensee is unable to practice medicine with reasonable skill and safety to patients”) “shall be kept confidential . . . unless the licensee refuses to comply with the order.” On the other hand, one subdivision provides that the most serious forms of discipline are not confidential, even pending an administrative appeal: under section 230 (10) (g) the “findings, conclusions, determinations and order” of a committee on professional conduct “shall become public upon issuance in any case in which annulment, suspension without stay or revocation of the licensee’s license is ordered.” This provision was enacted to change the previous practice, in which no disciplinary findings were made public until the administrative review process had been completed (see Sponsor’s Letter to Counsel, Aug. 1, 1996, Bill Jacket, L 1996, ch 627).
 

 No statute explicitly provides either for confidentiality or public release of the records of physician disciplinary proceedings where such proceedings result in some lesser discipline than “annulment, suspension without stay or revocation of the licensee’s license” or in dismissal of the charges. Strong reasons, however, support the Department’s policy of making public the records of proceedings in the first category after the administrative review process is complete. The public’s interest in knowing that a physician has been subjected to discipline—even, as in this case, the relatively mild discipline of a reprimand—is obvious, and we cannot conclude, in the absence of an express statutory provision, that the Legislature meant to withhold this information from the public. But in the case of a physician who has been wholly exonerated, the policy considerations are very different, and lead us to interpret Public Health Law § 230 (9) as prohibiting public disclosure. It is hard to imagine why the Legislature would have wanted to grant the public access to records of terminated proceedings that led to a doctor’s complete exoneration, while keeping confidential proceedings in which a doctor was subjected to “warning[ ],” “consultation[ ]” or “monitoring.”
 

 In the sentence in
 
 Doe
 
 on which the Department relies, we referred to “disciplinary proceedings involving licensed professionals” and cited cases involving discipline of attorneys and judges, as well as medical professionals
 
 (Doe,
 
 81 NY2d at 1052). It was then, and remains, our view that the policies governing confidentiality in these professions are broadly similar, though
 
 *671
 
 each is governed by its own specific statutes and rules. The statutes governing judges and lawyers clearly require that disciplinary proceedings remain confidential, even after termination, where there is no finding of wrongdoing (Judiciary Law § 45 [1] [judges]; § 90 [10] [attorneys]). While the Legislature has not spoken as clearly in the case of doctors, we believe it intended the rule to be the same. We therefore hold that the statutes governing physician disciplinary proceedings require confidentiality, even after the termination of the proceedings, where no charge against the doctor is sustained.
 

 This holding does not resolve this case, for here one charge of wrongdoing was sustained while all the others were dismissed. Petitioner contends that the Department had an obligation to separate the sustained charge from the dismissed ones, and to make public only materials relating to the former.
 
 *
 
 Under the unusual circumstances of this case, we agree.
 

 In cases where disciplinary proceedings lead to a mixed result, the Department should have discretion in deciding whether its records should be redacted to keep confidential material relating to the charges that were not sustained. In many cases, the Department may well be justified in refusing to redact. The Department is entitled to consider not only the extent to which public knowledge of the dismissed charges would aggravate the damage to the physician’s reputation that is done when the sustained charges are publicized; it may also consider the administrative difficulty of redaction, and the importance of making the proceedings that resulted in discipline comprehensible to the public. In this case, however, we conclude that making the dismissed charges public was an abuse of discretion.
 

 Here, the dismissed charges and the charge that was sustained were very different in kind. The dismissed charges related to a romantic encounter; the sustained charge to a telephoned prescription. They were also very different in gravity. The dismissed charges involved alleged abuse of a patient’s trust, while the sustained charge involved a bit of carelessness in record-keeping that, apparently, would have resulted in no more than a confidential “administrative warning” if the dismissed charges had not been present. Finally, the dismissed charges and the sustained charge did not arise out of simultaneous or closely-connected events. The record-keeping failure occurred at least a
 
 *672
 
 week after the office encounter. On these facts, it is impossible to justify permitting a minor, “technical violation” to result in sensational, but discredited, charges of serious wrongdoing becoming available to the public.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs. The certified question should not be answered upon the ground that it is unnecessary.
 

 Chief Judge Kaye and Judges G.B. Smith, Ciparick, Rosenblatt, Graffeo and Read concur.
 

 Order affirmed, etc.
 

 *
 

 In Supreme Court, petitioner asserted that all the proceedings relating to him should remain confidential. He has now abandoned that contention.