OPINION OF THE COURT
Judith J. Gische, J.
Petitioner is a physician licensed to practice medicine in the State of New York. Respondents are the public agencies charged with regulating medical licenses and investigating and prosecuting charges of professional misconduct.
After an investigation by respondent, Office of Professional Medical Conduct (OPMC), on or about October 4, 2004, charges were drawn against petitioner, alleging multiple specifications of professional misconduct. The matter was assigned to an administrative law judge and scheduled for a hearing. In the interim, petitioner, through an attorney, negotiated a settlement agreement with the respondents. An agreement in principle was reached and a document containing the negotiated terms was drafted. The petitioner signed the drafted agreement on or about November 2, 2004, but the respondents thereafter refused to sign it. The offer of settlement was subsequently rescinded.
While the negotiations leading to the agreement were proceeding, petitioner’s attorney and the staff attorney representing respondents discussed whether the finalized consent decree would be made public. Plaintiff was aware that it was respondents’ practice to publish the statement of charges and the contents of consent decrees on the OPMC Web site. While there is some variance on the particulars of the conversations that ensued, what each attorney asserts as the substance of these conversations is unambiguous. Petitioner adopted the legal posture that Public Health Law § 230 and the recent Court of Appeals case of Anonymous v Bureau of Professional Med. Conduct/State Bd. for Professional Med. Conduct (2 NY3d 663 [2004]) prohibited respondents from publishing the charges and/or the consent decree. Respondents maintained the Court of Appeals decision does not pertain to a situation where an accused doctor enters into a consent decree, but rather applies *629 only when the doctor successfully defends against the charges. Respondents further contended that where, as here, petitioner doctor was admitting that he could not defend against at least one of the alleged acts of misconduct, public policy obligated the publication of the charges.
The consent agreement that was drafted did not expressly address whether the charges and the agreement’s contents would be or could be published. It was readily apparent to all sides, however, that once the consent agreement was formally executed, respondents intended to publish its contents (including the statement of charges). The respondents further made it clear that they believed they had no obligation to obtain plaintiffs consent before doing so.
As a consequence of their disagreement about publication, petitioner brought a CPLR article 78 proceeding (first article 78 proceeding). In that first article 78 proceeding, he sought a ruling and an order from the court prohibiting respondents from publishing the charges and/or any part of the consent agreement. At that point, respondents refused to sign the consent agreement and they withdrew the settlement proposal that had been previously negotiated. Petitioner withdrew the first article 78 proceeding because the relief he sought had become moot.
In this new article 78 proceeding (second article 78 proceeding), petitioner seeks to compel respondents to execute the drafted consent agreement that they withdrew. Petitioner maintains that the parties had reached a full understanding of the settlement terms, and that the “deal” had been preapproved by respondents at the highest levels of authority within the respondent agencies. Thus, it is his contention that having it executed by the appropriate individuals is no more than a ministerial and perfunctory act that should be compelled by the court at this time.
Petitioner accuses respondents of withdrawing the drafted agreement for retaliatory reasons. He contends that respondents withdrew the agreement to punish him for challenging their decision, and professed policy, that unproven charges resolved though a consent agreement could be published. Thus, it is his contention that, because he exercised his constitutional right to litigate this dispute in court, he will now be forced to litigate a matter he thought they had already resolved. To rectify this situation, petitioner argues that the court should compel respondents to sign the consent agreement. He also seeks an order sealing the file of this second article 78 proceeding, and a per *630 manent injunction against any hearing going forward on the underlying charges.
Respondents oppose the relief requested. They maintain that settlements of pending charges of professional misconduct are within their discretion and their discretion cannot be curbed by forcing them to execute an agreement with which they do not agree. Respondents maintain that consent agreements are subjected to a preapproval process, but they are never final and binding until and unless they are actually executed by all the necessary parties. They further argue that they did not withdraw the settlement offer for retaliatory reasons, or as retribution, but because a material term of the settlement was never agreed to, that being the ability of respondents to inform the public about the charges. They claim this fundamental disagreement was obvious when petitioner brought the first article 78 proceeding.
Discussion
1. Mandamus
An article 78 proceeding which seeks to compel a government official to undertake a particular act is in the nature of a writ of mandamus. (CPLR 7801; Klostermann v Cuomo, 61 NY2d 525 [1984].) It is an extraordinary remedy that is only available under limited circumstances. Mandamus is available to compel the performance of a nondiscretionary duty and then, only where there has been a showing of a clear legal right to the relief sought. (Matter of Hassig v New York State Dept. of Health, 5 AD3d 846 [3d Dept 2004].) Where a party seeks to compel a public official to undertake a purely discretionary act, a writ of mandamus is not available. (Matter of Kaufman v Tudor Realty Servs. Corp., 4 AD3d 212 [1st Dept 2004], lv denied 3 NY3d 604 [2004].) Mandamus is available, however, to compel a public official to execute an agreement where the governmental entity has otherwise legally entered a binding contract. (Matter of Express Indus. & Term. Corp. v New York State Dept. of Transp., 93 NY2d 584 [1999].)
It is conceded, and there can be no controversy, that the respondents have no obligation to enter into a consent agreement that otherwise settles charges pending against a licensed medical professional. The decision whether to settle a case in which charges have been filed is purely discretionary. 10 NYCRR 51.10 (a) specifies that at any time prior to the final order or determination, the parties “may” resolve the issues by stipula *631 tion. The permissive language underscores that any stipulation is discretionary with respondents.
Petitioner argues that there is already a binding contract because all of the material terms have been agreed to. His attorney, who is familiar with disciplinary matters of this nature, explains that typically preapproval from the director of OPMC is obtained before any consent agreement is even drafted or signed. He believes that such preapproval was obtained in this case.
Respondents argue that, although the director of OPMC is consulted, no agreement is ever final or binding until it is actually signed. They argue that this procedure is true in every case they have. They claim that they withdrew their offer to settle in this case when it was clear that the parties seriously disputed the issue of publication.
The court holds that the language of the draft consent agreement and the applicable regulations require actual signatures by respondents in order for any consent agreement to be binding and enforceable. In the absence of such signatures, there can be no agreement. Obtaining the required signatures is more than a ministerial act. 10 NYCRR 51.10 (c) indicates that a consent agreement in satisfaction of charges filed against a licensed medical doctor shall be signed by the following parties: “The signators to such an agreement shall be the licensee, his or her counsel, if the licensee is represented, the attorney for the department, the director of the Office of Professional Medical Conduct and the chairperson of the State Board for Professional Medical Conduct.”
The various layers of approval required from respondents are themselves an indication of the importance of signatures and for there to be actual approval of any stipulation from more than just the staff attorney negotiating the agreement. The preliminary approval procedures followed by habit and custom do not negate the discretion of the director of OPMC or the chairperson of the State Board to finally review and either accept or reject the consent agreement once drafted.
The draft agreement also contains language indicating that final signatures from the respondents were necessary in order for it to be binding. Thus, as part of the draft consent agreement, petitioner states the following as true:
“I ask the Board to adopt this Consent Agreement.
“I understand that if the Board does not adopt this *632 Consent Agreement, none of its terms shall bind me or constitute an admission of any of the acts of alleged misconduct; this Consent Agreement shall not be used against me in any way and shall be kept in strict confidence; and the Board’s denial shall be without prejudice to the pending disciplinary proceeding and the Board’s final determination pursuant to the Public Health Law.”
If, in fact, there was an already binding agreement prior to signature by the respondents, no such reservation language would have been necessary. The language manifests petitioner’s understanding that unless and until respondents actually signed the consent agreement, there was no such agreement.
The court is not persuaded by petitioner’s claim that he partially performed the consent decree in reliance upon representations that it was a “done deal.” The acts of partial performance petitioner relies upon are that he currently has a chaperon with him when he practices medicine. The draft consent agreement requires 10 months of actual suspension from the practice of medicine and only thereafter the right to practice medicine with a chaperon. His agreement to have a chaperon with him at this time is not a current condition of the draft consent agreement and could not have been in partial performance thereof. It is more likely the result of what respondents claim was an interim agreement to adjourn the hearing on the underlying charges while the parties were negotiating settlement.
Nor is the court persuaded that respondents rescinded their consent in retaliation to petitioner bringing the first article 78 proceeding. Respondents’ withdrawal of their consent was certainly a response to the issues raised in the first article 78 proceeding, which involved privacy and public policy concerns regarding publication of consent decrees and filed charges. The position of respondents regarding publication, however, was not new or limited to this petitioner. Their action was in furtherance of an established policy. Respondents believe they have a right to publish such consent decrees regardless of whether petitioner consents or not. Certainly they have the right to insist as part of any consent decree that a licensed medical professional agree to such publication. Just like a criminal defendant can waive his or her constitutional rights in exchange for a plea bargain (People v Stephen J.B., 23 NY2d 611 [1969]; see also Battaglia v New York City Tr. Auth., 225 AD2d 384 [1st *633 Dept 1996]), a licensed medical professional can give up his or her statutory right of privacy (assuming one exists) as a condition of respondents stipulating to a consent agreement in satisfaction of pending charges of misconduct.
Moreover, the legal issue of whether petitioner even has a right of privacy protecting against publication of charges after a consent agreement has been signed is very much an open question, even after the Court of Appeals decision in Anonymous v Bureau of Professional Med. Conduct (2 NY3d 663 [2004]). The Court of Appeals held that the statutory law, Public Health Law § 230, prohibited the publishing of unsubstantiated charges against a medical doctor, who has been wholly exonerated. In so holding, however, the Court recognized that Public Health Law § 230 (10) (g) provides for the publication of findings, conclusions, determinations and orders, where an annulment, suspension without stay, or revocation of a medical license is ordered. The Court of Appeals also recognized that strong reasons supported the policy of making public such records of discipline and other forms of discipline after a doctor has been found to engage in misconduct. The Court left open for a case-by-case analysis whether substantiated charges could or should be separated from unsubstantiated ones for purposes of publication. 10 NYCRR 51.10 (b) provides that a consent order shall have the same force and effect as an order issued after a hearing.
Thus, the legal issue of whether and what could have been published if the draft consent agreement was signed was wide open and the source of further and continuing legitimate dispute between these parties. The decision by respondents to withdraw the offer of settlement because it contained no assurances on publication was not retaliatory or punitive against petitioner. Rather it was in furtherance of respondents’ established policy objective of letting the public know about these proceedings, particularly when a doctor admits he cannot defend against one of the charges and agrees to a 10-month unconditional suspension of his license.
Finally, it is important to understand the petitioner loses no substantive rights due to respondents withdrawing the offer of settlement. Petitioner still has his right to a hearing, at which he can contest the charges. If he is wholly exonerated, then publication is not an issue, because it would be prohibited under the Court of Appeals ruling. If the charges are sustained only in part, petitioner still has the right to contest what part of the findings and charges can be published under that same Court of *634 Appeals ruling. (Anonymous v Bureau of Professional Med. Conduct/State Bd. for Professional Med. Conduct, 2 NY3d 663 [2004].)
2. Injunctive Relief
The request for an injunction against the underlying disciplinary proceeding going forward is denied. In the absence of an agreement settling the disputes, respondents must prosecute the case and the petitioner will be given a full and fair opportunity to factually and legally oppose the charges. The request for an injunction against the hearing going forward is denied.
3. Sealing the Court Record
As a separate and alternative prayer for relief, petitioner seeks that this file be sealed. 22 NYCRR 216.1 (a) provides that no order sealing a court record shall be entered except upon a written finding of “good cause.” The court is required to consider the interest of the public as well as the parties in making such determination.
The underlying matter concerns disciplinary proceedings brought against a physician duly licensed in New York State. Those charges have not yet been substantiated. Indeed no hearing has yet been held on the charges. In the recent case oí Anonymous v Bureau of Professional Med. Conduct (2 NY3d 663 [2004]), the Court of Appeals balanced (albeit in a different context) the competing interest of the public and the parties in making public unsubstantiated charges brought against a licensed professional. The Court held that, as a matter of general policy and statutory law, disciplinary proceedings involving licensed professionals should remain confidential until finally determined. The Court relied on Public Health Law § 230 (9) finding that pending disciplinary proceedings not be open to the public and that terminated proceedings remain confidential if they have been resolved in the physician’s favor. The Court acknowledged that there are competing policy considerations relating to the public’s right to know and evaluating whether allegations of misconduct are being pursued with appropriate vigor and efficiency. On balance, however, the Court of Appeals resolved the issue in favor of keeping unsubstantiated charges confidential.
The same policy balancing requires that this court file be sealed. The charges against petitioner have not yet gone to a hearing and have not yet been substantiated. This article 78 proceeding at its core is to resolve the issue of what part, if any, *635 of a consent decree resolving the charges can be made public. If the file is not sealed then the price for litigating this very-important issue would be to make public that which petitioner currently has a clear right to protect.
The right of the public to know will also be protected upon the conclusion of the underlying disciplinary proceeding. The parties will either negotiate an agreement in which they agree upon what should be publicly disclosed or the matter will proceed to hearing, and, if the charges are substantiated, the matter will be made public according to Public Health Law § 230 and the recent Court of Appeals ruling.
Conclusion
In accordance herewith, it is hereby ordered that the relief requested in the article 78 proceeding, compelling respondents to sign a consent agreement, is denied; and it is hereby ordered that the relief requested in the article 78 proceeding, staying a
hearing on the underlying disciplinary charges against petitioner, is denied; and it is hereby ordered that the request to have this file sealed is granted upon the court’s finding of good cause.
Any relief not expressly granted herein is denied.